[No. 430. Decided July 11, 1892.]

JOHN E. BURNS, *Appellant,* v. THE COMMENCEMENT BAY LAND & IMPROVEMENT COMPANY, *Respondent.*

APPEAL—MOTION FOR NEW TRIAL—CORPORATIONS—COMPENSATION TO TRUSTEE.

Where a non-suit has been granted, no motion for a new trial is necessary in order to secure consideration of the cause on appeal.

A trustee of a corporation cannot recover pay for services rendered the corporation when such services are within the line of his regular duties as such trustee, unless there is some express provision therefor in the articles of agreement or by-laws, or some other authority therefor than the actions of the trustees themselves. (HOYT, J., dissents.)

*Appeal from Superior Court, Pierce County.*

*Snell, Bedford & Claypool,* for appellant.

*Pritchard, Stevens, Grosscup & Seymour,* for respondent.

The opinion of the court was delivered by

SCOTT, J.—The respondent moves to dismiss the appeal because no motion for a new trial was made in the court below. We have previously held, in *Jones v. Jenkins,* 3 Wash. 17, that a motion for a new trial was not necessary, except to call the attention of the court and to obtain a ruling upon matters which had not been previously presented, and which there had been no opportunity to present during the progress of the trial. In this action, when the plaintiff had introduced his proof, the defendant moved for a non-suit, which the court granted. The matters involved were directly presented and ruled upon, and it was not necessary to present them again and obtain another ruling preliminary to an appeal. The argument that probably the same could have been

more fully or forcibly presented to the court after a lapse of time, wherein counsel could have prepared themselves for argument, affords no sufficient reason for requiring the same to be done.   It might be true in some cases, in others it might not.   The same argument might be used in favor of a second or third motion for a new trial.   In granting a non-suit, the court is supposed to have taken into consideration all the testimony.   Where a doubtful question is presented, the safer practice is to let the case go to the jury.   If it appears, however, that there is no testimony upon which a recovery could be founded, the motion for a non-suit should be granted.

### ON THE MERITS.

Plaintiff brought suit against defendant to recover pay for certain services, alleging that, during the year 1889, the defendant employed him to prepare plans and specifications, and to superintend the construction of a wharf on Commencement Bay for said company, and that it agreed to pay him therefor a reasonable sum.   The complaint contained other necessary allegations as to what was a reasonable price, etc.   The defendant answered, denying the allegations of the complaint, and for a further answer alleged that at the times mentioned in the complaint, the plaintiff was one of the trustees and general officers of the defendant, and that while he was such trustee the defendant caused to be constructed for its use and benefit the wharf aforesaid, and that whatever services the plaintiff performed in connection with the building of said wharf, were part of the official duties of the plaintiff as a trustee and officer of the defendant, and that no compensation therefor was provided in the by-laws of said corporation, or the laws by virtue of which the same was organized, or by a resolution of its trustees, or otherwise.   The plaintiff replied, admitting that he was one of the trustees, but deny-

ing each and every other allegation contained in the affirmative defense.   The proof, however, showed the answer to be correct in that there was no provision made in any wise for any payment for such services.

The plaintiff testified that he did all the preliminary work, including preparing the plans and specifications and drawing the contract for said wharf, and afterwards superintended the construction thereof, and attended to the surveying, and sounded the depth of the water in locating the wharf and its line of approaches.   That no bargain or contract was made with reference to his pay therefor. That there was not any mutual or any understanding that he was to do it for nothing.   That the time during which said services were rendered covered the full period of a year.   His son testified that his father spent a good deal of time in drawing the plans and specifications, and that nearly every day plaintiff used to go out in a small boat to the wharf, and that sometimes he went with him, and took soundings back and forth in deep water, getting the depth.

It does not appear that these plans and specifications prepared by the plaintiff were ever used by the defendant. He was asked on cross-examination what he had done with them, and testified that part of them was left with Frank C. Ross, the vice president of the company, and a part of them he thought he had himself.   The contract for building the wharf was let to David Rutherford and C. T. Bergeson, partners as Rutherford & Bergeson.   David Rutherford testified that he saw Capt. Burns, the plaintiff, out there occasionally while the wharf was being constructed, and that also Mr. Ross, the vice president, was out there occasionally while the work was in progress. He further testified he never saw any plans or specifications prepared by Mr. Burns for the work; that the only thing Burns did in that direction he knew of was to draw a rough sketch with a pencil showing how he wanted the

plank laid down; that they never had any plans, and worked from none in building the wharf, and that none were needed. C. T. Bergeson, the other contractor, testified that they never had any plans for the building of the wharf, excepting Capt. Burns showed them how he wanted the planking put on.

The plaintiff testified that he acted as superintendent by virtue of a written authorization upon the minutes of the company; that it was given at the company's office at a regular meeting of the trustees and stockholders. He further claimed that he had the verbal direction and instruction of all the board of trustees, and nearly all of the stockholders, for doing the work. Allen C. Mason, called for the plaintiff, testified that he was president of the defendant corporation, that he had with him the minute book of the company, and the articles and by-laws. He was asked to read from the minutes the item relating to the appointment of the plaintiff. Said minute was as follows:

"At a meeting of the board of trustees, etc., Messrs. Ross and Burns were appointed a committee to draft plans and specifications for a wharf to run from the L wharf 6,000 feet more or less back to the company's deeded property, and to advertise for bids for the same."

And the further item that—

"Messrs. Ross and Burns were appointed a committee with power to act with reference to the letting of the contract for the wharf on Main street and Commencement street from 12th street referred to above."

Witness said:

"I would say in this connection that the 'referred to above' means that this being a long meeting in which the matter of building the wharf and its location were discussed, that is what it meant by referring to previous sections, and the bids of Bergeson and Rutherford, and the contract let to Rutherford & Bergeson."

And the further item that—

"Colonel Ross had reported that he had contracted with Messrs. Rutherford & Bergeson to extend the company's wharf to the mainland."

Witness further testified that was all there was in the minutes relating to this matter, and there never was a resolution authorizing Capt. Burns to superintend the work. That the by-laws did not provide for a general superintendent or manager, nor can there be found anywhere in the minutes of the company any employment of Capt. Burns as claimed.

The articles of incorporation were introduced in evidence, showing that the corporation was organized for various purposes, which included the building of wharves; that the number of its trustees should be three, and that Allen C. Mason, John E. Burns and Frank C. Ross should be the trustees and managers of the concerns of the company for the first six months. These articles were executed the 21st day of May, 1889. The by-laws were also introduced, and, in art. 4, it was provided that the trustees should have power to conduct, manage and control the affairs and business of the corporation, together with other duties and powers therein mentioned.

The proof in relation to the services plaintiff claims he had performed is very unsatisfactory. After an examination of all the proof that was introduced on which the plaintiff was non-suited, and giving it the most favorable view, to which, of course, he is entitled, with regard to a motion for a non-suit, it seems to us there was no foundation for a recovery. The services performed by him were clearly within his duty as a trustee of the corporation, unless, perhaps, the work he did relative to the plans and specifications should be excepted, and there the proof utterly failed. The minutes show that two of the trustees,

Ross and Burns, were appointed to draw these plans and specifications; that they were prepared by the plaintiff, and delivered by him, or that a part of them was delivered by him to Ross, the other trustee. There is nothing to show they were ever approved by Ross, or by the company; or that they were ever delivered or called to the attention of the company in any way, and the proof shows they were never seen or used by the contractors. It is true he was specially authorized, in connection with Ross, to prepare these plans and specifications, and to let the contract. He does not sue, however, for any services performed by him as to the letting of the contract.

While, of course, in a case where the testimony is contradictory, the jury are to pass upon it, and as against the motion for a non-suit the plaintiff is entitled to the most favorable consideration that could be placed upon such testimony, it appears that the only express authority he had to act in the premises was as to drawing the plans and specifications, and as to letting the contract in connection with Mr. Ross, one of the other trustees. There was no authority in the minutes of the company directing him to superintend the work, although he so testified in his direct testimony, but when these minutes were introduced there was nothing in them relating to any direction as to his superintending the work, and it was not claimed upon his part that there were any other minutes with reference thereto than the ones introduced in evidence. Consequently, his testimony must be taken in this direction as limited by the minutes, which he said were in existence and which were subsequently introduced, and which failed to substantiate his testimony as to the superintending of the work. The trustees of the corporation were all authorized to superintend the work, and it was made their duty in the articles of incorporation and by-laws of the company, for which no pay was provided. It seems, giving

564 BURNS v. COMMENCEMENT BAY LAND, ETC., CO.

Opinion of the Court—Scott, J.        [4 Wash.

the plaintiff the most favorable claim that can be based on all the testimony, when the same is sifted and explained, there was nothing whatever to go to the jury.

If there was any proof upon which he could found a claim of pay, although it might be slight, we would not favor ordinarily the taking of such testimony away from the jury.   The jury are made the judges of questions of fact, and, except in cases where there is no doubt as to the materiality or sufficiency of the testimony, courts should not invade the province of the jury and take the case away from them.

There was some testimony on the part of plaintiff with reference to his having incurred certain expenses in connection with this work.   The amount of such expenses was nowhere proven, and he did not sue for any expenses, nor did he claim that he had ever presented any claim therefor to the company, excepting in one instance, and that was for the employment of the steamer "Mocking Bird," for which he did present a bill, and which the company paid.   His son also testified that his father performed services as to the procuring of piles and a pile driver.   On cross-examination it appeared the only information he had as to these matters was obtained from his father, and tha, it was hearsay.   The plaintiff himself did not claim to have performed any such services, nor did he sue therefor, and the testimony of the contractors showed that no such work was performed by him, but that they obtained the piles and pile driver themselves.   These matters would not be alluded to were it not for the argument in the brief of appellant alleging the plaintiff incurred various expenses and performed these services in relation to obtaining the piles and pile driver, but an inspection of the record shows that any claim therefor was wholly unfounded either in the pleadings or proof.

A point was made that the work the plaintiff sued for

was performed before the corporation was organized or while the organization thereof was being considered, and pending the same, which seems to have occupied some time, and it is contended he could not recover pay for such services of the corporation under the circumstances of this case for that reason.    We find it unnecessary, however, to further allude to that question.

It seems to us the articles of incorporation and the by-laws and minutes of the meetings, in connection with the services the proof showed the plaintiff actually did perform, all go to show there was no expectation that the plaintiff, or any of the trustees, were to be paid for any of such services.    It does not appear any claim was made therefor until some time after the plaintiff had ceased to be a trustee and had sold his interest in the corporation.    It was provided in the by-laws of the company that minutes should be kept of all the proceedings of the trustees.    It was not claimed by the plaintiff that any resolution had been introduced or acted upon in any of the meetings of the corporation, or of the board of trustees, relating to employing him in the matters aforesaid, or providing for his compensation therefor, which had not been entered upon the record.    The verbal authorization that he claims to have had was not proven in any way excepting he seems to have conversed with various members of the company, and that there was a general understanding that he would superintend the construction of the wharf aforesaid; but, as we have seen, it was his duty as one of the trustees of the company to superintend the construction of said wharf.

It is further provided in the by-laws that the trustees should appoint and remove at pleasure all officers, agents and employes of the corporation, and to prescribe their duties and fix their compensation, and this was the only provision therein contained relative to the compensation of

any one, and it clearly did not include or authorize them to provide any compensation for themselves or any one of them for the performance of their duties as trustees.

As to any understanding between the plaintiff and the stockholders or other trustees of the corporation relating to the employment and pay for the work aforesaid, it is observed that the plaintiff did not sue upon an implied contract, but upon an express contract, as he claims, entered upon the minutes of the company, authorizing him to perform the work.    According to his own claim, the one thing that was left to be determined was as to his compensation therefor.    This understanding was disputed by some of the other stockholders of the company, and this goes to show the insecurity that would result, and the objectionable nature of the rule that would allow a trustee of a corporation to recover pay upon an implied contract for services rendered which were within his regular duties.

There are some cases which hold that, in the absence of any express prohibition in the articles or by-laws of the corporation preventing its officers from receiving any pay, that they may recover pay on an implied contract for services rendered, although such services were within their duties as officers of the corporation.    It seems to us, however, that the better authority is the other way, and that a trustee or officer of a corporation cannot recover pay for such services without an express provision therefor, and this must come from the articles of agreement or by-laws, or from some other source or authority than the action of the trustees themselves.    Where a trustee of a corporation performs services which are clearly outside of his duties as trustee, as, for instance, where he is an attorney at law, and attends to the litigation of the company, he may recover pay for such services, but it must appear before any recovery can be had therefor, or for any services rendered by a

trustee in the absence of any provision for payment, that the same are outside of his official duties, so that there can be no room for doubt in the premises.

In *New York, etc., R. R. Co. v. Ketchum*, 27 Conn. 170, it is said that—

"Doubtless a director may perform extra labor, and for it be justly entitled to a compensation for his time and expenses, and this may be made out even without an express promise, for a promise may be implied from the peculiar and extraordinary services rendered, but then the services must appear to be of an extraordinary character, and this beyond all question or doubt, for as director he agrees to give his services, and is entitled to make no charges whatever, however severe and protracted may be his labors. A different rule would lead to great abuses and corruption. We cannot but think it important in every case, that, where a person holding the position of a director, expects or may be fairly entitled to expect a compensation for his services, the services should appear to have been agreed for, or their nature and extent should appear to be such as clearly to imply that both parties understood they were to be paid for, and not rendered gratuitously within the scope of a director's duty. . . . That directors have no right to charge for performing official duty, is a principle universally admitted to be sound law. We find it so laid down in the elementary books, and in several decided cases, and the reasons assigned most forcibly commend themselves to our approbation."

In *Ten Eyck, v. Pontiac, etc., R. R. Co.*, 74 Mich. 226; 16 Am. St. Rep. 633, it is stated:

"The third point relied upon is one upon which there is an apparent conflict of authority. The directors of a corporation are its agents. The entire management of corporate affairs is committed to their charge, upon the trust and confidence that they shall be cared for and managed within the limits of the powers conferred by law upon the corporation, and for the common benefit of the stockholders. They are required to act in the utmost good faith, and, in accepting the office, they impliedly undertake to give to

the enterprise the benefit of their best care and judgment, and exercise the powers conferred solely in the interest of the corporation. They have no right to represent the corporation, in any transaction in which they are personally interested, in obtaining an advantage at the expense of the company they represent. 1 Mor. Priv. Corp., § 517. But the rule is not an arbitrary one. It is founded on reason. Although it has been held by some courts that a director cannot enter into a valid contract with the corporation of which he is an agent, although the corporation is represented in the transaction by a majority of the board, yet the decided weight of authority and of reason supports the doctrine that such a contract would be valid. Id., § 527, and cases cited in note 3. It is not necessary to the binding action of a board of directors that each member should take part in its deliberations. The general rule is that a majority of the members of the board constitutes a quorum for the transaction of business, and a majority of the quorum have power to bind the corporation by their vote. It does not necessarily follow that there is impropriety in a member of the board entering into contract relations with the corporation represented by the other members of the board. There may be cases where there may be manifest propriety in doing so. Suppose the line of a railroad is laid across land owned by one of the directors, may he not enter into a contract to sell a right-of-way to the corporation? Suppose a director is possessed of superior knowledge, skill, or ability to serve the corporation in matters not strictly within the line of his duty as a director, may it not contract with him for his services?"

In that case the plaintiff sued to recover pay for his services as an attorney, he being a director of the railroad company, and having rendered services at its request. The court held that he was entitled to recover the reasonable value of such services.

It was stated that the above rules only apply to officers having the management and control of the corporate business and property, such as its trustees, and that any other of its agents or employes, who have no voice in its manage-

ment, are not precluded from recovering pay for their services upon an implied contract, or for any services performed by them for the corporation, such as treasurer, secretary and attorney, although such persons should be stockholders of the company.   The distinction is that there is no temptation on the part of such persons to misapply the funds, or to perform any services not connected with their business or employment for the purpose of obtaining additional pay.

Affirmed.

ANDERS, C. J., and DUNBAR and STILES, JJ., concur.

HOYT, J. (*dissenting*).—The conclusion arrived at by the majority of the court, that the services for which appellant brought this action were simply those which it was his duty to render as member of the board of trustees of the corporation defendant, is perhaps true as to a large portion of such services, but I am unable to bring my mind to the conclusion that there were none of such services that did not fall entirely outside of his duties as a trustee. Some of the services for which he claims, were of a nature which could have been just as well performed by any employe of the corporation as by one of its trustees. - I can see no reason why services of this kind should not be paid for by the corporation when by its properly constituted officers it had agreed to so pay for them.   The proof satisfies me that the plaintiff, when rendering much of these services, supposed that he was to be compensated therefor, and that the conduct of the defendant by its officers and agents had been such as to warrant him in thus supposing. In fact, from the record it is clear to my mind that the defendant, at the time the services were rendered, intended to pay plaintiff therefor what they were reasonably worth.   I think the judgment should be reversed, and the cause remanded for a new tr ial.