[No. 7756.  Decided March 3, 1909.]

CHARLES M. DIAL, *Respondent*, v. INLAND LOGGING
COMPANY, *Appellant*.[1]

CORPORATIONS — OFFICERS — COMPENSATION — CONTRACT FOR SERV-
ICES—EVIDENCE—SUFFICIENCY.  It is sufficiently shown that the
three directors of a company each owning one-third of the capital
stock, were to devote their time to the company without other com-
pensation than the anticipated profits, where it appears that there
was no express contract to pay wages, and under the by-laws their
duties were to be performed without payment other than for travel-
ing expenses in the absence of a contract therefor, and plaintiff's
filing of a claim for a lien for wages, and assignment thereof for
about one-half the face value, without any demand made on the
company, shows his bad faith; since a director cannot recover for
services upon an implied contract, unless the services were clearly
outside of his ordinary duties and it was well understood they were
to be paid for.

SAME—CONTRACT—DEFINITENESS.  A statement by a director of
a corporation that he always reckoned wages to be deducted before
computing profits, is too indefinite to constitute a contract to pay
compensation for the services of a director.

PAYMENT—ASSIGNMENTS—COMPROMISE AND SETTLEMENT.  An as-
signment of a claim by a creditor to the debtor constitutes a settle-
ment and payment of the claim.

ASSIGNMENTS—NOTICE TO DEBTOR—EQUITIES—SETTLEMENT.  The
assignment of a claim to a third person, without notice to the
debtor, does not deprive the debtor of equities subsequently arising
by reason of payment to or settlement with the debtor.

RECORDS—ASSIGNMENTS—CONSTRUCTIVE NOTICE.  There is no law
authorizing the recording of an assignment of a claim, and the
record thereof is not constructive notice to the debtor.

Appeal from a judgment of the superior court for Island
county, Still, J., entered March 24, 1908, upon findings in
favor of the plaintiff, in an action to recover for services per-
formed and to foreclose a lien therefor.  Reversed.

*Albert D. Martin* and *H. A. Martin*, for appellant.

*B. B. Crawford*, for respondent.

[1]Reported in 100 Pac. 157.

Gose, J.—This action was instituted by the respondent against the appellant to recover a judgment for the sum of $969.56, and to foreclose a laborer's lien filed on certain personal property to secure the same, which amount and claim of lien were assigned to him by one A. F. Peters. From a judgment against the appellant for the sum of $400, but denying the lien, it prosecutes this appeal.

The complaint avers in substance, that on the 6th day of October, 1906, the appellant made an oral contract with the said Peters, whereby it agreed to pay him the reasonable value of his services as foreman of its logging camp; that pursuant to the contract Peters performed services for it as such foreman for a period of six months; that the reasonable value of such services was $150 per month, making in the aggregate $900; that under a similar contract Peters, upon the expiration of such period, performed services for it of the reasonable value of $69.56; that such claim had been assigned to the respondent.

The alleged claim grew out of the following facts: On the 8th day of October, 1906, the said A. F. Peters, C. O. Walston and G. A. Wahlstrom, the last two of whom were brothers, organized a corporation with a paper capitalization of $25,000, for the purpose of engaging in the logging and lumbering business. At this time Peters put into the corporation a fifteen hundred dollar note. Walston and Wahlstrom each paid the sum of $2,500. Later C. O. Walston put into the corporation an additional sum of about $4,500, and his brother about $2,500. In the articles of incorporation it is provided that C. O. Walston, A. F. Peters and G. A. Wahlstrom shall constitute the board of trustees for the first six months. A few days subsequent to the signing of the articles of incorporation, the three incorporators adopted and certified by-laws for the. government of the corporation, and elected the said Peters as president, C. O. Walston as secretary and manager, and G. A. Wahlstrom as vice president.

Art. 7, subd. 3 of such by-laws gives the president, subject to the advice of the trustees, the power to direct the affairs of the corporation. Art. 5, subd. 3, empowers the trustees "to supervise all officers, agents, and employes and see that their duties are properly performed." Touching the compensation of the officers and trustees, it is provided in Art. 10, that "the board of trustees shall be allowed their reasonable traveling expenses when actually engaged in the business of the company, to be audited and allowed as other cases of demand against the company"; and that "the officers shall receive such compensation as the board of trustees shall from time to time fix and determine."

The evidence shows that Peters was the foreman of the logging camp for six months, and that he acted as a general utility man for one month; that there was no express contract of employment between the appellant and himself; that a few days before the execution of the articles of incorporation, he had a conversation with C. O. Walston, in which the latter said to him, in substance, that in his business he always reckoned wages to be deducted before he computed a profit; that C. O. Walston devoted almost his entire time to the business of the corporation, and that a part of the brother's time was occupied in promoting its interests; that Peters at no time mentioned wages to his co-trustees; that he filed his claim for a lien in the sum of $969.56, and assigned it to the respondent for a consideration of $400, without making any demand for payment; that about five days after such assignment, in consideration of the payment to him of the sum of $375 by the appellant, he executed and delivered to it an instrument of writing as follows:

"I, A. F. Peters, for and in consideration of the sum of $375, to me in hand paid by the Inland Logging Company, the receipt whereof is hereby acknowledged, do hereby assign, set over and transfer to the said Inland Logging Company, all my right, title and interest in and to the said Logging

Company and any and all claims which I may have at this date. Dated this 20th day of May, 1907. A. F. Peters;"

that at this time he said nothing to the appellant about the claim or its assignment; that the three incorporators were to have one-third each of the capital stock, and that its profits were to be divided on a like basis.

A careful reading of the by-laws of appellant and the evidence in the case makes it certain that it was the intention of each of the incorporators to devote his talent and energies to the prosecution of the corporate business, without wages, save such as they expected would result in the way of profits. What they believed would be a profitable enterprise terminated in a loss. The fact, however, that a profit did not result does not entitle Peters to make a charge for his services. The fact that Peters worked for seven months, filed a lien against the property of the appellant for $969.56, and sold it for $400 without either a demand for payment or any notice to the debtor that he asserted a claim against it, makes it reasonably certain that his demand was not made in good faith. We are not impressed with his explanation that he assigned the claim to the respondent for $400 for the reason that he was in need of money. The fact that he was in need of money, if his claim had an honest basis, would have induced him to undertake to settle the same with the appellant rather than to make such a sacrifice. Indeed, his several acts lead irresistibly to the conclusion that he was not to be compensated for his work except from such profits as might result from the enterprise. It is also worthy of observation that as a trustee the by-laws made it his duty "to supervise all officers, agents and employes and see that their duties were properly performed." This was just what he did. It was his duty under such by-laws to do this without compensation other than reasonable traveling expenses when actually engaged in the business of the company, in the absence of evidence of an express or implied agreement to pay him. The law governing com-

pensation in such cases is very clearly stated in *Brown v. Republican Mountain Silver Mines*, 17 Colo. 421, 425, 30 Pac. 66, in the following words:

"But even if the more liberal rule may be resorted to in some cases, it certainly should be held that a director cannot recover compensation for services rendered by himself to his corporation *upon an implied contract* unless it be established by a clear preponderance of the evidence, first, that the services were clearly outside his ordinary duties as a director, and, second, that they were performed under circumstances sufficient to show that it was well understood by the proper corporate officers as well as himself that the services were to be paid for by the corporation."

This court, in *Burns v. Commencement Bay Land & Imp. Co.*, 4 Wash. 558, 566, 30 Pac. 668, 709, recognizes the same view in the following language:

"It seems to us, however, that the better authority is the other way, and that a trustee or officer of a corporation cannot recover pay for such services without an express provision therefor, and this must come from the articles of agreement or by-laws, or from some other source or authority than the action of the trustees themselves. Where a trustee of a corporation performs services which are clearly outside of his duties as trustee, as, for instance, where he is an attorney at law, and attends to the litigation of the company, he may recover pay for such services, but it must appear before any recovery can be had therefor, or for any services rendered by a trustee in the absence of any provision for payment, that the same are outside of his official duties, so that there can be no room for doubt in the premises. In *New York etc. R. Co. v. Ketchum*, 27 Conn. 169, it is said that—'doubtless a director may perform extra labor, and for it be justly entitled to a compensation for his time and expenses, and this may be made out even without an express promise, for a promise may be implied from the peculiar and extraordinary services rendered, but then the services must appear to be of an extraordinary character, and this beyond all question or doubt, for as director he agrees to give his services, and is entitled to make no charges whatever, however severe and protracted

may be his labors.   A different rule would lead to great abuses and corruption.   We cannot but think it important in every case, that, where a person holding the position of a director, expects or may be fairly entitled to expect a compensation for his services, the services should appear to have been agreed for, or their nature and extent should appear to be such as clearly to imply that both parties understood they were to be paid for, and not rendered gratuitously within the scope of a director's duty.   .   .   .   That directors have no right to charge for performing official duty, is a principle universally admitted to be sound law.   We find it so laid down in the elementary books, and in several decided cases, and the reasons assigned most forcibly commend themselves to our approbation.' "

The conversation between Peters and Walston as to wages is too indefinite to constitute an express contract for compensation, and the evidence as an entirety excludes the thought that there was an implied one.

There is another rule of law which precludes a recovery, viz., the assignment of the claim to the appellant heretofore set out was made without notice of the assignment to the respondent.   An assignment of a claim by a creditor to the debtor is, in legal effect, a settlement and payment of the claim.   The rule is thus stated in 4 Cyc., pp. 33-4:

"But until notice of the assignment is given to the debtor it will not bind him so as to deprive him of equities arising between the date of the assignment and the date when he received notice thereof.   As to such equities the assignment takes effect from the time the debtor receives notice and not from the time of the assignment."

We are not aware of any statute, and none has been called to our attention, requiring or authorizing the recording of an assignment of a lien of the character of the one in this case.   In the absence of such a statute the recording of the assignment to the respondent before the assignment to the appellant did not operate as constructive notice.   *Howard v. Shaw,* 10 Wash. 151, 38 Pac. 746; *Fischer v. Woodruff,* 25

Wash. 67, 64 Pac. 923, 87 Am. St. 742; 2 Pomeroy's Equity Jurisp. § 651. It follows, therefore, that the appellant had neither actual nor constructive notice of the assignment to the respondent.

For the reasons stated, the case will be reversed with instructions to dismiss the same.

RUDKIN, C. J., FULLERTON, CHADWICK, CROW, DUNBAR, and MOUNT, JJ., concur.