(August 4, 1924.)

T. P. HARSH, Respondent, v. SILVER HILL MINING COMPANY, a Corporation, Appellant.

[228 Pac. 337.]

CLAIMS FOR SERVICES BY OFFICER OF CORPORATION — IMPLIED CONTRACT TO PAY FOR SERVICES OUTSIDE OF SCOPE OF OFFICIAL DUTY.

1. Evidence adduced by an officer of a corporation in support of claims for services rendered outside the scope of his official duty will be carefully scrutinized by courts, and the rule of *uberrima fides* applied.

2. *Held,* that the evidence presented by the record in this case shows that respondent rendered services to appellant corporation clearly outside his ordinary duties as trustee or president.

3. The managing officer of a corporation may recover the reasonable value of necessary services rendered to such corporation entirely outside the scope of his duties as such officer, upon an implied promise to pay for such services, when they were rendered under such circumstances as to raise a fair presumption that the parties intended and understood they were to be paid for, or ought to have so intended and understood.

APPEAL from the District Court of the Eighth Judicial District, for Bonner County. Hon. John M. Flynn, Judge.

Action to recover on promissory notes executed by defendant corporation in payment of services claimed to have been rendered by plaintiff. Judgment for plaintiff. *Affirmed.*

C. T. McDonald and E. W. Wheelan, for Appellant.

The directors of a corporation are trustees for the corporation and the stockholders thereof, and are held to the exercise of good faith in dealings between the corporation and third parties and themselves. (*McLean v. Hayden Creek Mining Co.,* 25 Ida. 417, 138 Pac. 331; *National Loan & Investment Co. v. Rockland Co.,* 94 Fed. 335, 36 C. C. A. 370; *McConnell v. Combination Min. & Mill Co.,* 31 Mont. 563, 79 Pac. 248.)

In order to recover for additional services rendered by an officer of the corporation outside of the duties incident to his office, the services must have been rendered under contract providing for payment, or under circumstances from which obligation to pay may be implied. (4 Fletcher, Cyc. Corp., p. 3982; *Notley v. First National Bank of Vicksburg,* 154 Mich. 676, 118 N. W. 486; *Ebner v. Alaska Mildred Gold Min. Co.,* 167 Fed. 456, 93 C. C. A. 92.)

In the absence of agreement for compensation the board of directors is without authority to allow compensation for past services. (4 Fletcher, Cyc. Corp., p. 4018; *Marcy*

Publisher's Note.

3. Right of officer or director, in absence of special contract, to compensation for services to corporation, see notes in 3 **Ann. Cas.** 734; **Ann. Cas.** 1915A, 454; **L. R. A.** 1917F, 310

v. *Shelburne Falls & C. St. R. Co.*, 210 Mass. 197, 96 N. E. 130.)

G. H. Martin, for Respondent.

Where a director or officer is employed in good faith to perform services outside his duties as director or officer, the law raises an implied contract on the part of the corporation to pay therefor, unless it appears that the services were rendered gratuitously or unless there was an understanding that no compensation was to be paid. (Thompson, Corp., 2d ed., secs. 1736, 1738, 1740, 1742; *Ten Eyck v. Pontiac etc. Co.*, 74 Mich. 226, 16 Am. St. 633, 41 N. W. 905, 3 L. R. A. 378; *Bassett v. Fairchild*, 132 Cal. 637, 64 Pac 1082, 52 L. R. A. 611; *Fitzgerald etc. Co. v. Fitzgerald*, 137 U. S. 98, 11 Sup. Ct. 36, 34 L. ed. 608; *Corinne Mill etc. Co. v. Toponce*, 152 U. S. 405, 14 Sup. Ct. 632, 38 L. ed. 493; *Gumaer v. Cripple Creek etc. Co.*, 40 Colo. 1, 122 Am. St. 1024, 13 Ann. Cas. 781, 90 Pac. 81; *Severson v. Bi-Metallic etc. Milling Co.*, 18 Mont. 13, 44 Pac. 79; *Barrenstecher v. The Hof Brau*, 67 Or. 194, 135 Pac. 518; *Blom v. Blom Codfish Co.*, 71 Wash. 41, 127 Pac. 596; *Cheney v. Lafayette B. & M. R. R. Co.*, 68 Ill. 570, 18 Am. Rep. 584; *Santa Clara Min. Co. v. Meredith*, 49 Md. 389, 33 Am. Rep. 264; *Althous v. Cobaugh Coll. Co.*, 227 Pa. St. 580, 136 Am. St. 908, note, 76 Atl. 316; *Taussig v. St. Louis etc. Ry. Co.*, 166 Mo. 28, 89 Am. St. 674, 65 S. W. 969; *Dunlap v. Moulina-Tonopah Min. Co.*, 192 Fed. 714; affirmed, 196 Fed. 612, 116 C. C. A. 286; *In re Knox Automobile Co.*, 229 Fed. 241; *Paine v. Kentucky Refining Co.*, 159 Ky. 270, Ann. Cas. 1915D, 389, 167 S. W. 375.)

JOHNSON, District Judge.—The plaintiff, respondent herein, brought this action against the appellant corporation to recover on two promissory notes. The first cause of action was upon a note for the sum of $1,320.41 executed by the appellant corporation to the respondent. The second cause of action was upon a note executed by the appellant

39 Idaho.—39

corporation to the respondent for the sum of $7,800. Both notes were dated April 23, 1921, due on demand.

The appellant denied the material allegations of the complaint, except the execution and delivery of the notes, and alleged that each of said notes was wrongfully, fraudulently and unlawfully made and delivered, and also pleaded as an affirmative defense to each cause of action that the respondent and the trustees of the appellant corporation wrongfully and unlawfully colluded and conspired to cheat and defraud the appellant company and its stockholders by wrongfully issuing to respondent the said notes. The appellant · further alleged as to the note set forth in the respondent's first cause of action that it was wrongfully issued to the respondent "for money wrongfully and fraudulently claimed to have been paid out by said plaintiff for labor and services, and on account of the pay-roll for and on behalf of the defendant company."

Appellant further alleged that the respondent had long prior to April 23, 1921, been fully repaid by the appellant company, and alleged that this was well known to the respondent and his co-conspirators prior to the making and delivery of the note.

Appellant alleged that the note of $7,800 set forth in the second cause of action was "wrongfully and fraudulently represented by the said plaintiff, Thomas P. Harsh, and his above-named co-conspirators to be in payment to the said plaintiff for services as manager of said defendant company," and further alleged that respondent had not, at the time of the making and delivery of said note, performed services as manager of said company which were worth said sum of $7,800, or any other sum or amount whatsoever; and that "all of which was on the 23d day of April, 1921, and always has been and still is well known to the said plaintiff and his said co-conspirators, and that the action of the plaintiff and his said conspirators as trustees of the defendant company, in presenting and allowing the said claim and issuing and delivering to the plaintiff the said note for $7,800 as aforesaid, was wrongful and fraudulent, and in ·

furtherance of their said wrongful conspiracy and consideration to cheat and defraud this defendant, and the stockholders thereof.''

Appellant further alleged: ''That it was expressly agreed by and between the plaintiff Thomas P. Harsh and the defendant company that the said plaintiff should never ask for nor receive and should never be paid any compensation whatsoever for his services as manager or president or other officer of said company until such time as the company should be a producing concern, and until such time as the company should have a sufficient net income from its operations and the shipping of ore and minerals from the mine, with which to pay the amount of salary or compensation, if any, at such time to be fixed and determined by the company.''

The appellant further alleged that both of the notes are entirely without consideration, and that appellant has never received any thing of value for or on account of either of said notes.

Appellant's counterclaim alleged that at the time said notes were delivered to the respondent the respondent was indebted to appellant in the sum of $1,300 for money advanced by the appellant to the respondent, and asked judgment against the respondent for this sum.

The cause was tried and verdict was found for the respondent on the first cause of action for $1,320.41, and on the second cause of action for $3,900, and judgment was entered upon said verdict. It was agreed between counsel during the course of the trial that the court should fix the attorney fees, and the court allowed respondent $100 attorney fees on the first cause of action and $400 attorney fees on the second cause of action.

This appeal is from an order denying a motion for a new trial.

The principal contention of the appellant is that the evidence is insufficient to justify the verdict of the jury, and that the verdict is against the law. The trial lasted five days and the evidence is very voluminous.

Appellant only assigns as error in the admission of evidence the ruling of the court in overruling the objection of the appellant to two questions propounded to the respondent as to the reasonable value of the services rendered by respondent.

It appears from the record that the appellant corporation was organized under the laws of Washington in August, 1917. Its mining property is situated in Bonner county, Idaho. The respondent's first connection with the appellant was in January, 1918, under a contract for the sale of stock, receiving stock in the appellant company as a commission for all stock sold by him. He became a director in the company about that time. He advanced in the early part of 1918, $3,000 of his own personal funds for appellant and received stock in appellant company in payment therefor at a meeting held August 19, 1918, at which time one H. Mabry was president. In October, 1918, he was elected president of the company. From August, 1918, to December, 1919, he advanced to the company out of his personal funds for laborers at the mine, supplies and expenses, the sum of $1,320.41, and on April 23, 1921, the board of directors of the appellant company allowed his bill and paid the same by executing and delivering the note sued upon in respondent's first cause of action. On April 23, 1921, one Fred Morescheck was the president of the company and presided at the meeting. The items going to make up this sum of $1,320.41 were fully presented in detail to the jury, and while there is some slight conflict in the evidence the jury has determined the weight of evidence on this question in favor of the respondent.

The next and more serious contention of the appellant is as to the respondent's second cause of action, the note for $7,800.

The trial court under appellant's allegations of lack of consideration for the notes and conspiracy to defraud, and fraudulent acts, permitted appellant to show the lack of consideration for the notes. The consideration claimed for this $7,800 note is shown by the account filed with appellant

by respondent for services as manager of the appellant company for twenty-six months at $300 per month from June, 1918, showing seven months in 1918, twelve months in 1919, nine months in 1920, or twenty-eight months in all, from which is deducted loss in time taken in stock selling, two months, or twenty-six months at $300, making a total sum of $7,800 claimed by respondent for such services as manager.

During the entire period of time covered by respondent's claim for compensation as manager he was a director of the appellant company and a part of the time he was the president.

This court in the case of *McLean v. Hayden Creek Min. etc. Co.*, 25 Ida. 416, 138 Pac. 331, announced its views as to the dealings of an officer of a corporation with the corporation, and under the rule of *uberrima fides* this court will look with suspicion on claims for services made by an officer of a corporation while also acting as a director and president. It therefore becomes necessary, under this rule, to review the evidence to determine whether respondent's claim for services as manager can be upheld.

The respondent was elected manager of the appellant corporation on January 2, 1918, as shown by the minutes of the meeting as follows:

"By motion duly made and seconded and carried, T. P. Harsh was appointed as manager of the company."

At the time of his election as manager he was operating with one Mabry under a contract dated December 31, 1917, to sell its stock. The appellant in this contract was the party of the first part and H. Mabry and T. P. Harsh (respondent herein) were parties of the second part. This contract contains the provision:

"That it is further understood and agreed that the parties of the second part shall have sole charge of development, management and operation of said mine during the life of this contract, for all said purposes, including the shipment of ores from said mine."

At the same meeting that elected the respondent manager his associate Mabry was elected president of the company.

This contract was terminated by an agreement entered into between the parties to the original contract on June 5, 1918, as shown by the following provision:

"In consideration of the release of all the parties to said contract from all liability thereunder, the parties of the first part (Mabry and Harsh) hereby surrender to party of the second part the said contract and all their rights under and by virtue of the same."

On July 1, 1919, two of the directors of appellant attempted to remove respondent as president and trustee. On August 11, 1919, the minutes contain the following entry:

"Motion was duly made and carried that Trustee T. P. Harsh be restored as president of said Silver Hill Mining Company, and that said T. P. Harsh manage the property and have ore taken from the lower tunnel and shipped to the smelter as fast as possible."

On October 7, 1919, after a new board had been elected, respondent was "made manager of the company for the ensuing year."

At no time was the salary of the manager fixed by the board, and no application was ever made by the respondent for the fixing of such salary. He did not present his claim for services as manager to said corporation until April 23, 1921, when it was allowed by the board.

The respondent testified as follows: "Q. Did you ever enter into a written contract that you were to receive three hundred dollars a month? A. I left that up to the directors, to fix salary themselves. I did not enter into no contract. Q. When did you leave that up to the directors? A. It was taken up with me, Mr. Birmingham and Mr. —— and they directed me under . . . . that was in . . . . Q. I am not asking you when you took it up there. I am asking you when you left it to the directors as to the salary? A. I am telling you at different times, you know that was in 1919, I believe, or 1920, the minutes show, that they directed me to bring in my vouchers, and Mr. Boatman told

me at that time that they were preparing to make a settlement with me, and at that meeting they directed me at the next meeting to bring in any vouchers. There was none present at the next meeting, except myself, Mr. Williams· and Doctor Fursey. I would have to act ·on my own statement and I would not do it. I brought my vouchers in and we did not act at all. And that was the last meeting that Boatman and Birmingham was at until the annual meeting, this last annual meeting. . . . . Q. I am asking you to point to the place where there was request upon your part for a salary and that was acted upon by the board? A. 'Moved by Mr. Boatman . . . . that Mr. Harsh be asked to make itemized bill to be presented at the trustees' meeting, everything included.' "

This last statement was shown to have been read from the minutes of May 4, 1920. He further testified that he never agreed on what his salary was to be and. that he never rendered any statement for salary except the one at the meeting ̀of April 23, 1921. "Q. Now, when did you first have a conversation with the board of directors of the Silver Hill Mining Company, if any, about your salary as manager after June 5, 1918? A. I don't remember of talking to any of them until after the meeting that Mr. Birmingham and Mr. Boatman were elected . . . . I believe it was in October, 1919, 1920, I would not say which, those dates I am mixed on."

The respondent does not give any conversation that he had at any time with any trustee of the appellant corporation concerning salary. His own counsel asked him the following question: "The minutes say: 'Everything to be included.' Was there anything said in that meeting about salary being included? If so, what was it?" And he answered: "I can't remember what was said regarding that, about what was said about the salary at that time."

It is apparent from the entire testimony that nothing was said by respondent as to salary prior to May 4, 1920, and that the next meeting of the board was in October, 1920.

Respondent makes no claim for services as manager after the last date.

The by-laws of the company provide as follows:

Art. IV, sec. 7. "The trustees shall elect officers of the corporation, and fix their salaries; such election to be held at the trustees' meeting following each annual stockholders' meeting. An officer may be removed at any time by a two-thirds vote of the full Board of Trustees."

Art. IV, sec. 9. "The trustees may, by resolution, appoint one member of the board as an executive committee to manage the business of the corporation during the interim between the meetings of the Board."

Art. IV, sec. 10. "At each annual stockholders' meeting the Trustees shall submit a statement of the business done during the preceding year, together with a report of the general financial condition of the corporation and of the condition of its tangible property."

Art. V, sec. 1: "The officers of this corporation shall be a President, a Vice-President, a Secretary and a Treasurer, who shall be elected for the term of one year and shall hold office until their successors are duly elected and qualified. No one shall be eligible to the office of President or Vice-President who is not a trustee of the corporation and any such officer who ceases to be a director shall cease to hold office as President or Vice-President as soon as his successor is elected and qualified. The offices of Secretary and Treasurer may be held by one person."

Art. V, sec. 2: "The president shall preside at all trustees' and stockholders' meetings; shall have general supervision over the affairs of the corporation and over the other officers; shall sign all stock certificates and written contracts of the corporation and countersign all checks; and shall perform all such other duties as are incident to his office. In case of the absence or disability of the President his duties shall be performed by the Vice-President."

During the time respondent was employed as manager he devoted practically his entire time to the affairs of the company. There were from four to ten men working at the mine

during most of the time, and men were employed at the mine until September, 1920. He hauled supplies of various kinds in his car from Spokane and other places to the mine. He directed the work of the mine and did whatever was required to carry on the business of the company. On several occasions he took the directors of the company to the mine for the purpose of inspecting it. He was requested by the directors from time to time to borrow money, and was out trying to raise money to get the company going, and, in so doing, visited other towns. He borrowed $1,500 in September, 1918, on his personal note and put up thirty thousand shares of his personal stock in the appellant company as collateral security, and later paid the note out of his personal funds. On other occasions he used his own personal funds to finance the company's operations.

The evidence established that the respondent rendered services clearly outside his ordinary duties as trustee or president.

The testimony of the witness Morescheck was to the effect that in August, 1918, when he purchased stock in the appellant company he was informed by McDonald, one of the trustees at that time, "that the only salaried men were the men working in the mine, and the manager"; and there is also testimony from respondent that at different times he talked with the officers of the company about his salary. While the testimony is not very clear on this point yet there is some testimony in the record.

The appellant is a Washington corporation operating under the laws of that state. It maintains its office in Spokane. The election of the respondent as its manager was in Washington. His services as such manager were largely rendered in that state. The notes sued upon were executed and delivered by appellant to the respondent at Spokane in the state of Washington. The officers of the appellant company while transacting its corporate business in that state must be subject to, and controlled by, the laws of that state. Prior to the incorporation of the appellant company the supreme court of Washington, in a decision rendered on

November 11, 1912, held, in the case of *Blom v. Blom Cod-fish Co.,* 71 Wash. 41, 48, 127 Pac. 596, at 599, as follows:

"It is contended that respondent should not recover be-cause of the want of an express contract on the part of appellant or its predecessor to pay him for the services rendered. This contention is rested upon the theory that, Blom being a trustee and the president, he was not entitled to compensation, in the absence of express contract to that end. So far as his services as trustee or president are con-cerned, we may concede that counsel's contention is correct. The trial court awarded judgment in respondent's favor upon the theory that the services for which Blom was en-titled to salary were not rendered by him as president or trustee, but as general manager of the business apart from the duties incident to such offices. In view of the nature and extent of the services rendered by him we think that the record fully justifies the conclusion of the trial court upon that theory. The rule relating to the allowance of reasonable compensation for services performed for a corpo-ration by a person who is also an officer of the corporation, when such duties are rendered apart from the duties in-cident to such office, is stated in 3 Clark & Marshall on Private Corporations, p. 2053, as follows: 'By the overwhelm-ing weight of authority, the doctrine that the directors and other managing officers of a corporation are not entitled to compensation, in the absence of express provision or agreement therefor, does not apply to unusual or extra-ordinary services; that is, services which do not properly pertain to their office, and are rendered by them outside of their regular duties. If such services are rendered by a director or other officer at the request of the corporation or the board of directors, with the understanding that they are to be paid for, the law will imply a promise, in the absence of any special agreement, to pay what they are reasonably worth. (21 Am. & Eng. Ency. of Law, 909; 10 Cyc. 22.) The decisions of this court in *Cors & Wegener v. Ballard Iron Works,* 41 Wash. 390, 83 Pac. 900, and *Argo*

*Mfg. Co. v. Parker,* 52 Wash. 100, 100 Pac. 188, are in harmony with this view."

And prior to the allowance of respondent's claim for services and the execution and delivery of the note by appellant to the respondent, the supreme court of Washington, on July 14, 1920, announced the rule governing compensation of officers of a corporation, in the case of *Wonderful Group Mining Co. v. Rand,* 111 Wash. 557, 191 Pac. 631, as follows:

"Where the board of trustees of a corporation is by its by-laws empowered to fix and allow compensation to its officers, and where they enter into a contract, express or implied, to allow compensation for services of such officers (other than trustees), the corporation is bound thereby, and such officer can recover reasonable compensation for such services or such salary as the board of trustees may fix as such reasonable compensation. Clark & Marshall, Corporations, vol. 3, pp. 3064, 3065; *St. Louis F. S. etc. v. Tiernan,* 37 Kan. 606, 15 Pac. 553; *Bassett v. Fairchild,* 6 Cal. Unrep. 458, 61 Pac. 793.

"It has been held that a trustee may receive compensation from the corporation for services which he performed, other than those performed by him as trustee. *Burns v. Comm. Bay Land Co.,* 4 Wash. 558, 30 Pac. 668, 709; *Blom v. Blom Fish Co.,* 71 Wash. 41, 127 Pac. 596; *Argo Mfg. Co. v. Parker,* 52 Wash. 100, 100 Pac. 188."

In 7 R. C. L., sec. 446, the doctrine is stated as follows:

"So the rule to be deduced from the modern and best considered cases seems to be that a person, although a director or other officer of a corporation, may recover the reasonable value of necessary services rendered to a corporation, entirely outside of the line and scope of his duties as such director or officer, performed at the instance of its officers, whose powers are of a general character, upon an implied promise to pay for such services, when they were rendered under such circumstances as to raise a fair presumption that the parties intended and understood they were to be paid for, or ought to have so intended and understood. . . . .

And it has been held that the general manager of a corporation, who is also a director, has a legal claim for the value of his services, although there has been no resolution of the board of directors or any express contract fixing his compensation, where he devotes his entire time to the business, and his duties are numerous and onerous, and not such as pertain to his office as director.''

Corpus Juris (14A C. J. 136, sec. 1906) states the rule as follows:

''A director or other fiduciary officer of a corporation presumptively serves without compensation. He is entitled to compensation for performing the usual and ordinary duties of his office when and only when there is a valid express agreement therefor; he cannot recover on an implied contract. Except in some jurisdictions, he may be entitled to compensation under an implied contract, where services clearly outside his ordinary duties as director or officer are performed under circumstances showing that it was well understood by the proper corporate officers as well as himself that the services were to be paid for.''

The supreme court of Oregon in the case of *Baines v. Coos Bay,* 41 Or. 135, 68 Pac. 397, held:

''As a general rule, an officer of a corporation cannot recover for services performed in the discharge of his official duties unless in pursuance of a resolution or by-law of the corporation to that effect. Where, however, the services are clearly outside the scope of his duties as such officer, he is entitled to recover on a *quantum meruit.*''

The supreme court of Wyoming, in the case of *Hjorth Oil Co. v. Curtis,* 25 Wyo. 1, 3 A. L. R. 765, 163 Pac. 362, stated the rule to be that a contract to pay a director or other officer of a corporation for services outside the scope of his official duty may be implied.

We conclude that the court's instructions, as a whole, correctly stated the law as applied to the facts; and that there is no reversible error in the instructions to which appellant objected. It is the settled law of this state that when no errors of law are shown the verdict of the jury will not

be set aside when there is a conflict in the evidence. The judge who presided at the trial saw and heard all the witnesses and he denied appellant's motion for a new trial.

We find no error which justifies a reversal of the judgment. The judgment is affirmed. Costs awarded to respondent.

McCarthy, C. J., and Wm. E. Lee, J., concur.