[No. 10598.   Department One.   November 11, 1912.]

CARL BLOM, as *Administrator etc., Respondent,* v. BLOM CODFISH COMPANY, *Appellant.*[1]

APPEAL—REVIEW—HARMLESS ERROR—ELECTION. In an action tried to the court, it is not prejudicial error to refuse to compel the plaintiff to elect between a cause of action upon an implied contract for services rendered, and a second cause of action upon a promissory note alleged to have been given as collateral security for the account due for services, where judgment was asked only upon the first cause of action and the note was ignored at the trial and in the decision.

EVIDENCE—DOCUMENTARY EVIDENCE—BOOKS OF ACCOUNT—IMPLIED CONTRACT. Books of account, openly kept by a general manager of a corporation for five years during which he had full charge of the

[1]Reported in 127 Pac. 596.

business, containing entries crediting himself with a monthly salary, are admissible as tending to show an implied contract to pay a reasonable sum for his services, when the books were open to the inspection of the officers and trustees of the corporation, who made no objection thereto except an objection to one raise in the salary.

SAME. Books of account, kept by a general manager of a corporation, are admissible for the purpose of showing the charges and credits against and in favor of the manager, since deceased, where, although not kept with the skill of an expert, they fairly show the transaction of the business covering a period of five years during which he was in control and the books had been at all times open to inspection of the officers, who made no objection thereto.

CORPORATIONS — OFFICERS — EMPLOYMENT — IMPLIED CONTRACT. Where a president and trustee of a corporation rendered services as a general manager with the consent of the other officers, he can recover on an implied contract for services as general manager, without any express contract therefor.

CORPORATIONS—OFFICERS—SERVICES—SALARY—FORFEITURE FOR FRAUD. Failure of a general manager working on a regular salary, to charge himself on the books with all the items properly chargeable to him, does not necessarily render him guilty of such fraud as to forfeit all his salary; especially where explanations are wanting through his decease, and all doubts were resolved against his estate.

APPEAL—REVIEW—HARMLESS ERROR. The admission of account books in evidence cannot be alleged as error, where the items considered in the account were credits favorable to appellant and reduced the claim.

CORPORATIONS—STOCK—SUBSCRIPTIONS—FULLY PAID STOCK. Where a corporation issued fully paid stock to stockholders in a corporation which it superseded, in consideration of the assets and good will of the first company, it cannot claim that the stock was not fully paid for because certain stock of the first company was not fully paid up; especially where it issued additional stock to equalize the prices paid for the stock of the first company.

LIMITATION OF ACTIONS—ACCOUNT—MUTUAL OPEN ACCOUNT. An account is a mutual, open account against which the statute of limitations does not run, where at no time six months intervened between any two payments; and it is immaterial that the books showing the charges were kept by one of the parties, where they were not his books, but were kept as general manager of a corporation, and the officers had access to the same.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered January 16, 1912, upon findings in favor of the plaintiff, in an action on contract. Affirmed.

*Willett & Oleson*, for appellant.

*J. A. Sorley*, for respondent.

PARKER, J.—This action was instituted in the superior court by the administrator of Torvald D. Blom, deceased, to recover compensation for services rendered by him during his lifetime to the Blom Codfish Company, a domestic corporation. A trial before the court without a jury resulted in findings and judgment in favor of the plaintiff, from which the defendant has appealed.

In May, 1905, the Blom Codfish Company of California was incorporated under the laws of that state, with its principal place of business at San Francisco. Its purpose was to engage in catching and marketing codfish, and soon thereafter it constructed a plant in Alaska, and also one at Dockton near Tacoma, in this state. It prosecuted its business continuously until January, 1907, when appellant Blom Codfish Company was incorporated under the laws of this state, with its principal place of business at Tacoma. The records of the California corporation, other than certain of its books of account, are not in evidence in this case; but records of appellant, the Washington corporation, in evidence here disclose the fact that it was organized by the same persons who owned the stock in and controlled the California corporation, and for the purpose of taking over all of the business and property of that corporation. In January, 1907, in pursuance of this purpose, appellant acquired all of the good will, business and property of the California corporation and, by resolution then entered in its minutes, assumed all of the debts and liabilities of the California corporation. It also caused to be issued to each of its stock subscribers, respectively, a like number of shares of its stock to that held by them in the California corporation, in

consideration of the good will, business, and property of that corporation then acquired by appellant. All of the stockholders of the California corporation thus became stockholders in appellant, the Washington corporation. So far as the business of· the two corporations is concerned, the transfer amounted only to a change of location, even the name remaining the same. While appellant procured and opened new books of record for its minutes and stock it did not procure or open new books of account, but continued to use the same ledger, cash book, journal, etc. used by the California corporation; which books show the accounts of both corporations, with the items entered therein in chronological order since January, 1905, without any indicated change in the ownership of the business.

From the organization of the California corporation until September, 1910, Torvald D. Blom was in full charge, and had the entire active management of the business. During that period he devoted practically all of his time to the management of the business. He was captain of a fishing schooner used in the business on some of its fishing trips to Alaska, and at other times attended to purchasing stores and provisions needed in the business and to preparing and marketing fish. He had supervision over all the employees, of which, at times, there were a considerable number. The books of account were kept by him, or under his direct supervision, during this whole period in which he had control of the collection and disbursement of the funds. He was a trustee and also president of both companies during this period. He caused himself to be credited upon the books with $150 per month salary up until April, 1908, $75 per month thereafter until September, 1908, and $125 per month thereafter. These credits appear to have been entered upon the books regularly on the last day of each month, except that there are five months in one credit made October 2, 1905, three months in one credit made December 31, 1905, five months in one credit made August 31, 1908, five months in one credit made

August 31, 1909, and four months made in one credit September 6, 1910. He died on September 10, 1910.

The nature and extent of the service he rendered was at all times well known to the trustees and others interested, and his claim for salary, as evidenced by these credits, would be clearly apparent to any one making the most casual examination of the books. The books were at all times open and accessible to the trustees and others interested. There is no evidence in the minutes showing formal authorization of the employment of Blom as general manager of the business, nor is there any evidence therein showing any formal action of the trustees fixing his salary as president, or for any other service he rendered the corporation.

The trial court concluded that these facts showed an implied contract of employment of Blom to render the services he did, and an implied agreement on the part of both corporations to pay him a reasonable compensation therefor; and also found that such services were reasonably worth the amounts he caused to be credited to himself upon the books. After deducting from the total of these credits all of the charges Blom had caused to be made against himself upon the books, the trial court found that he was chargeable with certain other items with which he had failed to charge himself. These items the court deducted from the balance claimed by the administrator, and rendered its judgment accordingly, in favor of the administrator and against appellant, for the sum of $3,172.64, with interest from September 10, 1910, the date of Blom's death. Other facts will be noticed as may become necessary in our discussion of the several questions presented.

It is contended by counsel for appellant that the court erred in denying their motion to strike from the complaint the second cause of action, or in the alternative to require respondent to elect between the two causes therein stated as to which he would proceed to trial upon. In his first cause of action, respondent pleads facts upon which he rests his right

to recover from appellant the sum of $6,118 as the reasonable value of services rendered by Blom. In his second cause of action, respondent pleads the execution of a promissory note by appellant to Blom for the sum of $5,000 payable upon demand, and also alleges "that said note was given as collateral to said account due for services." Judgment was demanded for the sum of $6,118 only, as if there were pleaded but one cause of action. Had this manner of pleading resulted in uncertainty or confusion in the issues, as it possibly might have done had the cause been tried by a jury, as in the case of *Gabrielson v. Hague Box & Lumber Co.*, 55 Wash. 342, 104 Pac. 635, 133 Am. St. 1032, relied upon by counsel, there would be some plausible ground for the contention made. But it is manifest from the record that the court tried the case upon the theory that there was but one cause of action pleaded, and received the note in evidence only for the purpose of explaining the entry of a charge of an equal amount made against Blom upon the books at the time of the execution of the note. The note was entirely ignored by the court as the basis of a cause of action. Plainly no prejudice resulted to appellant from the ruling complained of.

It is contended that the books were erroneously admitted in evidence. This contention seems to be rested upon the theory (1) that, having been kept by Blom or under his direct supervision, they constitute inadmissible self-serving declarations; (2) that there is no evidence that the persons making the entries had actual knowledge of the transactions recorded; and (3) that the books upon their face appear to be so illy kept as to render them incompetent as proof of the transactions recorded. These books, it seems to us, are to be viewed in two aspects: Are they admissible as tending to show an implied contract of the corporation with Blom to pay him for his services, and are they admissible to show the items he was chargeable with and the balance due him at the time of his death?

In view of the nature and extent of the services rendered by Blom, we think the fact that he was the active manager in charge of the entire business during this whole period with the full knowledge and consent of the trustees and others interested, the fact that he openly caused these credits for salary to be made upon the books covering this entire period of nearly five years, charging against such credits the items of cash received by him at frequent intervals during the whole of the same period, the fact that the merest casual examination of the books would disclose all of these credits and charges, and the fact that the books were at all times open and accessible to all of the trustees and others interested who presumably had knowledge of their contents, render such books admissible as tending to show an implied contract for the rendering by Blom of such services as general manager of the business, and to pay him a reasonable compensation therefor. The fact that the credits so caused to be made by Blom in his favor upon the books standing alone may in a sense be regarded as self-serving, we think does not render them inadmissible, in view of the attending circumstances we have noticed. There is no evidence that the trustees, or any other person interested, ever made any objection to these credits for salary, except that there is some slight evidence tending to show that there was some objection raised to the amount of his salary in October, 1908. This evidence, whatever its weight may be, would seem to tend to prove an understanding existing between Blom and the company that he was to receive at least reasonable compensation for his services.

That the books were admissible to show items of cash received by Blom during the period they covered, seems clear, since such entries are against his interest. But whether the books are admissible for the purpose of showing that such entries constitute all of the items he is chargeable with, is the real question here. While the books do not appear upon their face to have been kept with that degree of skill one might expect from an experienced bookkeeper, they do, nevertheless,

fairly show the transactions of the business covering the entire period from 1905 until September, 1910, assuming that the entries therein made state the truth. While the trial court found that Blom was chargeable with a number of items not charged to him upon the books in his ledger account, the additional items so found by the court to be chargeable to him were all taken from the books. In other words, the court proceeded upon the theory that the books themselves showed the items Blom was chargeable with though such items were not all charged to him in his ledger account. We think under these circumstances the books were admissible in evidence to show the entire amount of the items Blom was chargeable with, and that the balance due upon the total amount of his salary as found by the court was determinable by this method. It is not so much a question of the knowledge of the transactions upon which the charges rest, possessed by the persons who actually entered them, as it is whether there are any other items chargeable against Blom. We are of the opinion that the books were admissible in evidence for this purpose, and that, under the circumstances, in the absence of evidence showing other proper charges against Blom, the trial court was warranted in concluding that the proper charges which were discoverable upon the face of the books were all that should be made against Blom.

It is contended that respondent should not recover because of the want of an express contract on the part of appellant or its predecessor to pay him for the services rendered. This contention is rested upon the theory that, Blom being a trustee and the president, he was not entitled to compensation in the absence of express contract to that end. So far as his services as trustee or president are concerned, we may concede that counsel's contention is correct. The trial court awarded judgment in respondent's favor upon the theory that the services for which Blom was entitled to salary were not rendered by him as president or trustee, but as general manager of the business apart from the duties incident to such offices.

In view of the nature and extent of the services rendered by him, we think that the record fully justifies the conclusion of the trial court upon that theory. The rule relating to the allowance of reasonable compensation for services, performed for a corporation by a person who is also an officer of the corporation, when such services are rendered apart from the duties incident to such office, is stated in 3 Clark and Marshall on Private Corporations, p. 2053, as follows:

"By the overwhelming weight of authority, the doctrine that the directors and other managing officers of a corporation are not entitled to compensation, in the absence of express provision or agreement therefor, does not apply to unusual or extraordinary services,—that is, services which do not properly pertain to their office, and are rendered by them outside of their regular duties. If such services are rendered by a director or other officer at the request of the corporation or the board of directors, with the understanding that they are to be paid for, the law will imply a promise, in the absence of any special agreement, to pay what they are reasonably worth."

See, also, 21 Am. & Eng. Ency. Law (2d ed.), 909; 10 Cyc. 922. The decisions of this court in *Cors & Wegener v. Ballard Iron Works*, 41 Wash. 390, 83 Pac. 900, and *Argo Mfg. Co. v. Parker*, 52 Wash. 100, 100 Pac. 188, are in harmony with this view.

It is contended that Blom's failure to charge himself with the items with which the trial court found he should have charged himself rendered him guilty of such fraud that he forfeited all right to compensation for his services. The question of forfeiture of all compensation under such circumstances must be governed largely by the circumstances of each particular case. While, according to the trial court's findings, Blom did fail to properly charge himself with certain items he should have been charged with, the trial court concluded that under the circumstances he was not guilty of such fraud as to warrant a forfeiture of all his compensation. The rule seems to be somewhat more rigid against an agent performing some particular service, and especially where his

compensation is to be in the form of commissions, than as to an employee working upon a salary. In the text of 26 Cyc. 1040, it is said:

"A breach of the contract of employment other than by quitting the service may prevent a recovery of any wages thereunder, as where the employee embezzles the money of his employer, or commits other criminal offenses, although not immediately injurious to the person or property of the employer. But a breach, after part performance, where it does not go to the essence of the contract will not prevent a recovery thereon, except where the breach was wilful and intentional. If the employee has failed to perform the contract according to its terms, but the employer has received the benefit of the labor which exceeds the damage resulting from the breach of the contract, a recovery on a *quantum meruit* is ordinarily permissible; and this is true whether the labor was received by the assent of the employer before the breach or whether it was received after the performance of all the work which was in fact done."

We are of the opinion that, under the circumstances of this case, the trial court was not in error in declining to adjudge a forfeiture of the whole of Blom's salary. In the trial court's memorandum decision filed in the cause, it is apparent that the entries found in the books of account here involved, as well as the books as a whole, were examined by the court in detail with great care, and that the court resolved all doubts in favor of appellant and against respondent, applying the rule of requiring strict account from agent to principal where their relations are as here shown, and placing the burden of explaining doubtful items upon respondent. That want of explanation at least as to some of these items may have resulted from the fact that Blom was dead is not at all improbable.

It is contended that the court should not have gone back of the organization of the Washington corporation, the appellant, which occurred in 1907, in considering the books of account as evidence in this case. That no prejudicial error resulted to appellant from this source is shown by the fact

that it appears from the books that whatever salary was charged and earned by Blom while working for the California corporation had been paid at the time of the transfer of the business to the Washington corporation. The ledger account upon which the monthly salary credits are shown appears to have been balanced on December 31, 1906. The items of account taken into consideration by the court, which should have appeared against Blom prior to the change to the new corporation, resulted in charges of some items against Blom by the court which would not have been so charged had the court ignored all entries in the books prior to the change of the business to the new corporation. So, instead of this being prejudicial to appellant, it worked to its advantage.

It is contended that Blom at the time of his death was indebted to appellant upon his stock subscription. The theory of this contention seems to be that Blom originally received his stock in the California corporation at a considerably less cost than par, though it is apparent that it was regarded as having been then paid for in full. Some other stock in the California corporation appears to have been paid for at a higher price than Blom paid for his. It seems to us, however, that this question is not open here, since the new corporation, the appellant, by resolution entered upon its minutes, caused to be issued to its stockholders the same number of shares they each had in the California corporation, in consideration of the transfer of the business, good will, and property of that corporation to the new corporation; and it is apparent from the record that it was intended that all should receive such stock in the new corporation as fully paid up stock. It also appears that the trustees of the new corporation, in order to equalize the price paid for stock in the California corporation, decided to issue sufficient additional stock to all stockholders who had paid for their stock in the California corporation in excess of that paid by Blom and some others. It appeared that all of the capital stock

had not then been taken, and that there was stock yet in the new corporation sufficient to supply this need. We think under the circumstances this is not a charge which appellant can now insist shall be made against Blom or his estate. Just what right creditors might have in this regard, in a proper proceeding, we need not now determine.

Some contention is made based upon the statute of limitations. The trial court regarded the account running between Blom and the corporations as an open mutual account, finding that the last charge made to Blom was on the 6th day of September, 1910, shortly before his death, and that at no time did so much as six months intervene between any two payments made by appellant to Blom to apply on his salary. This finding is fully justified by the entries made in the books showing the receipt by him of payments from time to time. This, we think renders it a mutual open account such as to toll the statute of limitations under Rem. & Bal. Code, § 166. Some contention is made that Blom could not thus toll the statute by merely making these charges, or causing them to be made. But we must remember that these credits were made not upon Blom's books but upon the books of the company which were kept by him or under his direction in the usual course of business; and we have also seen that the presumption is that all of these entries were within the knowledge of the trustees. Counsel are not contending that Blom did not actually receive the amounts charged from time to time. We think it follows that no part of the balance due upon Blom's salary is barred.

Other contentions made by counsel for appellant we think are without merit, and are not such as require discussion. Among other contentions made, argument is advanced at considerable length upon the correctness of the court's findings. We deem it sufficient to say that we have read the entire record, and while the facts are much involved and the case is very difficult of solution with any degree of exactness, we are of the opinion that the learned trial court has given the

details painstaking attention, and after allowing credits to appellant and resolving doubts in its favor, a correct conclusion has been reached upon the respective rights of the parties.

The judgment is affirmed.

MOUNT, C. J., CHADWICK, GOSE, and CROW, JJ., concur.