[No. 15801.   Department One.   July 14, 1920.]

WONDERFUL GROUP MINING COMPANY, *Respondent*, v. L. L. RAND, *Appellant*.[1]

CORPORATIONS (308)—OFFICERS—COMPENSATION—VOTE BY INTERESTED TRUSTEE. A board of trustees of a corporation consisting of five members cannot, by the passing of three resolutions, vote compensation for past services to four of the members, although one resolution was for a salary as secretary, one for a salary as treasurer, and the other for legal services to two other trustees; since all but one member were pecuniarily interested in the general plan, and to be valid it would be necessary that three disinterested members vote for the passage of each resolution.

Appeal from a judgment of the superior court for Spokane county, Hurn, J., entered September 29, 1919, upon findings in favor of the plaintiff, in an action by a board of trustees to recover salaries paid to officers of a corporation, tried to the court. Affirmed.

*D. W. Henley,* for appellant.

*Don F. Kizer,* for respondent.

MACKINTOSH, J.—In 1896, the respondent was organized under the laws of this state for the purpose of developing mining claims located in British Columbia. In article 4, section 3, of the by-laws of respondent it is provided: "The treasurer shall be entitled to such compensation as the board of trustees shall fix and allow." By article 5, section 2, it is provided that the "secretary shall receive such compensation as the board of trustees may fix and allow." The trustees, in July, 1896, fixed the salary of the secretary at $75 per month, which was paid until November, 1896, and on October 7, 1896, the salary of the treasurer was fixed at $50 per month, and the salary of the secretary increased to $125. Both of these officers drew these

[1]Reported in 191 Pac. 631.

salaries from November 1, 1896, until the board of trustees passed a resolution September 14, 1897, abolishing all salaries. These were the only resolutions with reference to salaries until the resolution of June 3, 1918. On that day a resolution was passed, by a vote of four of the five members constituting the board of trustees, providing for the payment to the secretary of a salary of $300 per year for the entire term during which he had acted as secretary, and paying the appellant, as treasurer, a like amount for a like time, and, at the same meeting, another resolution was passed paying to two other members of the board of trustees $500 each for legal services. Of the members of the board of trustees, the one who voted against these three resolutions was a beneficiary of the last resolution.

From 1897 to 1913, the company was inactive, the ore chute of the mines having been lost. During this time neither the license fees due the state of Washington or to the province of British Columbia were paid, and from 1902 until 1917, no meeting was held of the stockholders. Members of the board of trustees resigned and their successors were elected by the remaining members, and in September, 1907, the board of trustees elected a secretary, who is the beneficiary of the resolution of June 3, and in 1915, elected the appellant Rand as treasurer. When elected secretary and treasurer, both officers were members of the board of trustees. From 1908 to 1913, there were no entries made in the books, and there was no transfer of stock from 1908 to 1915. Only one meeting of the board of trustees was held from 1908 to 1913. In 1913, the trustees entered into a lease of the mining property, under which royalties were paid, which in the event of purchase were to apply on the sale price. Prior to June 3, 1918, these royalties amounted to $9,000. Shortly

prior to June 3, 1918, a verbal agreement had been made for an extension of this lease for a period of three years, and at the meeting of June 3, 1918, after having passed the resolution already mentioned, a resolution was passed granting such extension.   Immediately after the close of this meeting, the trustees repaired to a bank in Spokane, where the meeting was held, and turned in their stock and drew down the purchase price, as provided in the extension agreement.   The secretary was paid $3,300, and appellant was paid $1,050, in conformity with the resolution passed on that date.

A new board of trustees having been elected, it repudiated the salary resolutions and instituted this action to recover the amounts paid thereunder.

During the time the company was in existence, the stock had been distributed in various hands and the stockholders generally had taken very little, if any, interest in the affairs of the company, and the arrangements which finally resulted in the sale of the property were arrangements which were made through the active instrumentality of the members of the board of trustees.   It is claimed by appellant that the testimony shows that he and the secretary, at the time they accepted election as secretary and treasurer, had an agreement with the board of trustees that they were to be compensated for their services, and had it not been for such agreement, they testified, they would not have accepted the offices.

Where the board of trustees of a corporation is by its by-laws empowered to fix and allow compensation to its officers, and where they enter into a contract, express or implied, to allow compensation for services of such officers (other than trustees), the corporation is bound thereby, and such officer can recover reasonable compensation for such services or such salary as

the board of trustees may fix as such reasonable compensation. Clark & Marshall, Corporations, vol. III, pages 2064-5; *St. Louis F. S. etc., v. Tiernan,* 37 Kan. 606, 15 Pac. 544; *Bassett v. Fairchild,* 132 Cal. 637, 61 Pac. 791, 64 Pac. 1082, 52 L. R. A. 611.

It has been held that a trustee may receive compensation from the corporation for services which he performs other than those performed by him as trustee. *Burns v. Commencement Bay Land Co.,* 4 Wash. 558, 30 Pac. 668, 709; *Blom v. Blom Codfish Co.,* 71 Wash. 41, 127 Pac. 596; *Argo Mfg. Co. v. Porter,* 52 Wash. 100, 100 Pac. 188.

The respondent contends, however, that the trustees of a corporation have no right to vote themselves compensation for past services, either as trustees or as officers. It is true that trustees cannot recover compensation for their services as trustees. 7 R. C. L. 445; *Crumlish's Adm'r v. Central Imp. Co.,* 38 W. Va. 390, 18 S. E. 456; *Ellis v. Ward,* 137 Ill. 509, 25 N. E. 530; *Wood v. Lost Lake & C. Mfg. Co.,* 23 Ore. 20, 23 Pac. 848.

It is unnecessary for us, in view of the determination we are to make of this case, to pass upon the question of whether the board of trustees might, under such power as is contained in the by-laws here, vote back salaries to officers who may also be trustees.

The record in this case shows clearly that the rule of law which provides that a trustee may not vote upon his own compensation was violated by the resolution of June 3, and that the act of the trustees in passing a series of resolutions awarding money to four out of the five members of the board was void. It appears that the members of the board of trustees felt, and honestly, that, as they by their efforts had secured a favorable sale of the property of the corporation, resulting in a benefit to the stockholders, that therefore

they should receive some compensation greater than that which would accrue to them merely through their ownership of stock. The method, however, by which they sought to obtain this extra compensation was not by a resort to the stockholders and from the stockholders to obtain authority to so compensate themselves. When they became members of the board of trustees they were charged with the duty of using their best efforts for the promotion of the interests of the stockholders, and nothing was done but what should have been done by them in the performance of such duty. By the resolution, the trustees were attempting to pay themselves for these general services under the guise of compensation for special services. The record in the case clearly indicates that these resolutions were merely a subterfuge. It appears that, at various times, discussions had taken place among the trustees, the net result of which was that a majority of them were inclined to compensate themselves after the property was finally disposed of, and that, when it had become apparent that a sale was to take place, and it having in general been agreed to on or before June 3, and that, in addition to the sale amount, the company was in possession of $9,000, due on royalties on the original sale agreement, which it had decided to retain before agreeing to an extension and modification of the original sale agreement, and that compensation could be secured from that amount, and instead of submitting the matter to the stockholders, the device of June 3 was adopted.

Granting that the board of trustees might compensate officers but not trustees for past services, it is the rule that, where concerted action of this kind is taken, the passing of a resolution awarding such pay must be had without the vote of any one pecuniarily interested in the resolution. The board of trustees consist-

ing of five members, it was necessary for three disinterested members to vote for the passage of each resolution. The record shows that, of the four voting for each resolution, three were pecuniarily interested in the general scheme, although the scheme was divided into three resolutions. Taking, for instance, the resolution awarding salary to the secretary, we find it was voted for by the president, who was to receive compensation under a companion resolution; the treasurer, who was to receive compensation under a companion resolution; the secretary, who was to receive compensation under the resolution itself, and one of the members who had no pecuniary interest in the general plan.

In the case of *Mallory v. Mallory Wheeler Co.*, 61 Conn. 131, 23 Atl. 708, three separate resolutions were introduced, fixing the salaries of the president, vice president, and assistant treasurer; the board of trustees consisting of the three officers and two others. The Connecticut court disposed of the contention that the trustees could evade the rule by making separate resolutions for each officer, saying:

"But whether this action of the directors be regarded as one vote or as three separate votes can make no real difference. If there were three votes, they were all passed at the same meeting. They were related to each other, and all had reference to one common object, the continuing the same persons in the management of the business of the corporation who were then managing it. So that the three separate votes, or the three parts of one vote, must all be taken together in order to ascertain what influences operated to procure the passage of any one of them, and to determine their effect when passed.

"It is not necessary to suppose that there was any formal agreement beforehand between the three directors interested that these three votes should all be passed. It is altogether likely there was no such agreement. But the votes were all before the directors'

meeting at the same time. These three directors were all present. They were each interested in the common object to be attained by their passage. No one of these votes could be passed without the affirmative voice of one of these directors.''

In the case at bar, the affirmative vote of at least two of the interested parties was needed to pass any one of the resolutions, and such trustees had no more right to vote on any of the resolutions than if only one resolution had been introduced embracing the contents of the entire three. *Jones v. Morrison,* 31 Minn. 140, 16 N. W. 854; *Boothe v. Summit Coal Mining Co.,* 55 Wash. 167, 104 Pac. 207; *Smith v. Los Angeles etc. Ass'n,* 78 Cal. 289, 20 Pac. 677; *Steele v. Gold Fissure Gold Mining Co.,* 42 Colo. 529, 95 Pac. 349.

For the reasons stated, the judgment will be affirmed.

MAIN, PARKER, and MITCHELL, JJ., concur.

HOLCOMB, C. J. (concurring)—I concur in the result, for reasons not stated in the majority opinion. The principal, and only reason necessary to here state, is that, as shown by the testimony of appellant himself, and of Schermerhorn, the secretary, what was contemplated, at the time of their election as treasurer and secretary, respectively, was compensation for performing corporate, executive duties, and not for additional duties as treasurer and secretary. Had there been any such agreement to grant them salaries as treasurer and secretary, even though not of record, and had it been performed, or made a charge upon the company prior to the consummation of the sale by the company's stockholders of the majority stock, in my opinion, they should have recovered such compensation. But, as a matter of *fact,* such was not the case.