[No. 16372. Department One. June 9, 1921.]

SACAJAWEA LUMBER & SHINGLE COMPANY, *Appellant*, v. SKOOKUM LUMBER COMPANY *et al., Respondents.*[1]

ATTORNEY AND CLIENT (21)—DISMISSAL AND NONSUIT (6)—CONTROL OF LITIGATION—PARTIES ENTITLED TO DISMISS. Parties to an action have the right to compose their disputes and dismiss the action without first paying or consulting their attorneys.

CORPORATIONS (128)—OFFICERS AND AGENTS—DEALINGS WITH CORPORATION. The president of a corporation had no authority to dismiss an action by the corporation upon the vote of its board of directors, where the majority therefor depended on the vote of one of the defendants who was a director in the plaintiff corporation; since a director in a private corporation has no power to vote upon a proposition wherein his individual interest is opposed to that of the corporation which he represents.

Appeal from an order of the superior court for Thurston county, Wilson, J., entered October 18, 1920,

[1] Reported in 198 Pac. 1112.

overruling plaintiff's motion to set aside an order of dismissal.  Reversed.

*F. Campbell* and *H. H. Johnston,* for appellant.

BRIDGES, J.—By this action the plaintiff sought to recover damages of the defendants because of a breach of contract.  At the time of the institution of the suit and for sometime thereafter, the defendant Tucker was the owner of one-third of the capital stock of the plaintiff and was also one of its directors.  One Richard W. Jamieson was also a director and the owner of one-third of the capital stock, and Julius LaVergne and his mother were the owners of the remainder of the stock, and the former was a director and the president of the company.  While the suit was pending, there was a directors' meeting at which the president of the plaintiff company was authorized to settle the litigation with the defendants and to cause the suit to be dismissed.  By virtue of this authority, the president later made a settlement, and a stipulation was entered into between the parties to the action, upon which the court entered an order dismissing the action.  Thereafter the plaintiff moved to set aside the order of dismissal and to reinstate the case, for the alleged reasons that plaintiff's attorneys had not been consulted concerning the settlement of the litigation or the dismissal of the case, and that their compensation had not been paid, and because the board of directors was without power to authorize the president to settle the litigation and cause the case to be dismissed, and because there was fraud in the whole transaction leading up to the dismissal of the case.  This motion was supported and opposed by certain affidavits.  After a hearing upon these affidavits, the court denied the motion to set aside the order

dismissing the action, and the plaintiff has appealed. Respondents have not appeared in this court.

The only question before us is whether or not the court was justified in refusing to set aside the order dismissing the action.

In a proceeding such as this, we cannot say that the affidavits show active fraud or overreaching in arriving at the settlement or dismissal of the action. Nor can we hold that the parties could not settle their differences and dismiss the action without first paying or consulting with their attorneys. The parties to an action always have the right to compose their disputes and are not under any legal obligations to first pay their attorneys or to consult with them concerning the settlement. The only substantial question before us is whether there was a valid authorization by the board of directors to the president of the appellant corporation to settle the litigation and dismiss the action.

It appears from the record that when the meeting of the board of directors opened, all of the directors, to wit: Mr. LaVergne, Mr. Tucker and Mr. Jamieson were present. At once thereafter it was announced to the meeting that Mr. Tucker had sold his capital stock in the appellant to Mr. Buchanan, who is one of the defendants in this case. Thereupon Mr. Tucker resigned as a director and Mr. Buchanan was elected in his stead. The meeting then proceeded to authorize the president of the appellant to settle the litigation and to cause the dismissal of the action. Mr. LaVergne and Mr. Buchanan voted in favor of this proposition, and Mr. Jamieson refused to vote and probably objected to the proceedings. The appellant takes the position that since Mr. Buchanan was one of the defendants in the case, it was against public policy for him to exer-

cise his vote as a director on the question of settling the
litigation, and that his vote was a nullity and conse-
quently there was but one valid vote in favor of the pro-
posed settlement, which, of course, was less than a
majority of the three directors. Since the dismissal of
the case rested entirely upon a settlement of the litiga-
tion, and since the president in making the settlement
and dismissing the suit acted by virtue of the supposed
authorization of the board of directors, if, as a matter
of law, Mr. Buchanan was not authorized to vote, then
it must follow that the president was without author-
ity to do the things complained of.

A director of a corporation occupies a strictly fidu-
ciary capacity and it is always his duty to fully repre-
sent the interests of the corporation of which he is a
director. While there is some authority to the con-
trary, the majority of the courts and text writers hold
that a director in a private corporation has no power
to vote upon a proposition wherein his individual inter-
est is opposed to that of the corporation which he repre-
sents. At page 92, 14a C. J., the rule is stated as
follows:

"A director who is disqualified by personal interest
from voting on a particular matter before the meeting,
cannot be counted for the purpose of making a quorum
or a majority of the quorum. The act done is invalid
where his presence is necessary to constitute a quorum,
or where his vote is necessary to the passage of the
resolution, regardless of the fairness or good faith of
the transaction. . . ."

In the case of *Burns v. National Mining, Tunnel &
Land Co.*, 23 Colo. App. 545, 130 Pac. 1037, the court
said:

"A board of directors of a solvent corporation may
borrow money from one or more individual members

of the board, and give the corporation's note for it, and even mortgage the corporate property to secure it, where the transaction is in good faith. . . . If the presence and vote of the director loaning the money is necessary to constitute a quorum, and to make a majority upon such vote, however, the act is voidable at the instance of the corporation or its stockholders. The trust relation existing between the directors and the stockholders of a corporation ought not to permit such an act, and a court of equity will scrutinize all contracts made in this way and set them aside, regardless of the good faith of the transaction.''

At 10 Cyc. 790, the rule is stated as follows:

''A director cannot with propriety vote in the board of directors upon a matter affecting his own private interest any more than a judge can sit in his own case; and any resolution passed at a meeting of the directors at which a director having a personal interest in the matter voted will be voidable at the instance of the corporation or the shareholders, without regard to its fairness, provided the vote of such director was necessary to the result.''

See, also, the following cases to the same effect: *Heublien v. Wight,* 227 Fed. 667; *Curtin v. Salmon River etc. Co.,* 130 Cal. 345, 62 Pac. 552, 80 Am. St. 132; *O'Rourke v. Grand Opera House Co.,* 46 Mont. 609, 133 Pac. 965; *United States Rolling Stock Co. v. Atlantic & Great Western R. Co.,* 34 Ohio St. 450, 32 Am. Rep. 380. Other cases involving this question may be found in the cases above cited.

But the question under discussion is not a new one to this court. In the case of *Parsons v. Tacoma Smelting & Refining Co.,* 25 Wash. 492, 65 Pac. 765, we said:

''The policy of the law forbids a trustee to assume a double function where there are adverse interests considered. . . . While there are observations by some of the text writers and expressions in some judi-

cial opinions refining upon acts which may be merely voidable, and not *per se* void, where an interested trustee's vote is necessary to adopt, we think on principle, and in the better-considered cases, such acts, when consummated by the necessary vote of the interested trustee, are voidable upon complaint of a stockholder.''

. We there quoted from the case of *Munson v. Syracuse etc. R. Co.*, 103 N. Y. 58, 8 N. E. 355, 57 Am. Rep. 701, as follows:

. '' 'The contract bound the corporation to purchase, and Munson, as one of the directors, participated in the action of the corporation in assuming the obligation, and in binding itself to pay the price primarily agreed upon between the plaintiffs and Magee. He stood in the attitude of selling as owner and purchasing as trustee. The law permits no one to act in such inconsistent relations. It does not stop to inquire whether the contract or transaction was fair or unfair.' ''

We also there quoted from *Bassett v. Fairchild,* 132 Cal. 637, 64 Pac. 1082, 52 L. R. A. 611, to the following effect:

'' '.  .  .  . there is no legal quorum of directors present when action is attempted to be taken on a matter as to which one of the directors necessary to make the quorum is interested.' ''

In the recent case of *Wonderful Group Mining Co. v. Rand,* 111 Wash. 557, 191 Pac. 631, discussing a somewhat similar question, we said:

. ''The record in this case shows clearly that the rule of law which provides that a trustee may not vote upon his own compensation was violated by the resolution of June 3, and that the act of the trustees in passing a series of resolutions awarding money to four out of five members of the board was void. .  .  . Granting that the board of trustees might compensate officers but not trustees for past services, it is the rule that, where concerted action of this kind is taken, the pass-

ing of a resolution awarding such pay must be had without the vote of any one pecuniarily interested in the resolution."

It must, however, be conceded that this court has not at all times been entirely consistent on this question. In the case of *Pitcher v. Lone Pine-Surprise etc. Min. Co.*, 39 Wash. 608, 81 Pac. 1047, Judge Root, speaking for the court, took a position apparently opposed to that announced in the previous case of *Parsons v. Tacoma Smelting & Refining Co., supra.* But in the *Pitcher* case no reference was made to the *Parsons* case. Manifestly, that case was not called to the attention of the court. A careful review of the whole question and the authorities convinces us that the rule of the *Parsons* and *Wonderful Group Mining Co.,* cases, *supra,* is supported by the better reason and is in accord with the great weight of authority.

Applying the law to the facts of this case, we conclude that Mr. Buchanan had no right to vote as a trustee for the appellant for the settlement of disputes between that company and himself, and that, consequently, the president of the appellant was without authority to dismiss the action.

The judgment is reversed, and cause remanded with directions to set aside the judgment dismissing the action.

PARKER, C. J., MACKINTOSH, FULLERTON, and HOLCOMB, JJ., concur.