### DENMAN v. RICHARDSON.

(Circuit Court of Appeals, Ninth Circuit. August 20, 1923.)

No. 3993.

1. **Appeal and error ⬅1046(1)—Ruling that claims barred harmles where jury found against similar claims.**

Ruling that certain of plaintiff's demands were barred by limitations was harmless, where the jury found against plaintiff on later claims of the same kind which were not barred.

2. **Appeal and error ⬅1046(1)—Ruling that plaintiff's assignor was estopped held harmless where jury found against plaintiff on another similar demand.**

Court's ruling that one assigning certain causes of action to plaintiff was estopped was harmless, where plaintiff set up other similar causes of action unaffected by the estoppel and the jury found thereon in favor of defendant.

3. **Trial ⬅253(8)—Instruction held properly refused as ignoring evidence showing extra compensation to corporate president was approved by trustees and stockholders.**

Instruction that corporate trustees alone had power to fix salaries of officers and that, if president collected certain extra compensation from accumulated profits without prior resolution of board of trustees, plaintiff, a stockholder, was entitled to recover, *held* properly refused as leaving out of consideration evidence tending to show that, while such extra compensation was first authorized by a stockholders' advisory committee, it was annually approved by board of trustees and stockholders.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Corporations ⬤⟺308(2)—Instruction as to recovery for past services rendered while trustee held properly refused under evidence.**

Instruction that corporate president, while acting as trustee, could not recover pay for past services in absence of express provision by statute, charter, by-laws, or agreement, entered into before services were rendered, *held* properly refused, where evidence showed that president was not manager and that liquidation of assets for which he received extra compensation was distinct from management of the corporation and outside scope of his duties.

**5. Appeal and error ⬤⟺1056(4)—Exclusion of evidence affecting one demand harmless where jury found against similar demands.**

Exclusion of evidence to meet claim that one assigning certain causes of action to plaintiff was estopped *held* harmless, where, on other similar causes of action, the jury found for defendant.

**6. Corporations ⬤⟺180—Creation of advisory board by majority stockholders not illegal so long as it remained advisory.**

Where large majority of stockholders of corporation lived in Great Britain, there was nothing illegal in creation by them of advisory board to work in harmony with trustees and officers in order to carry out wishes of the majority, so long as it remained only an advisory board.

In Error to the District Court of the United States for the Southern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Action by F. L. Denman against Charles Richardson. Judgment for defendant, and plaintiff brings error. Affirmed.

See, also, 284 Fed. 592.

The Pacific Cold Storage Company, a corporation of the state of Washington, had a capital stock of a million dollars divided into 10,000 shares of $100 each. The plaintiff in error owned 60 shares. He filed a complaint in the court below against the defendant in error setting forth four causes of action. In the first, he alleged that the defendant between the years 1912 and 1918, while acting as director and president of the corporation, wrongfully appropriated from the earnings of the corporation $18,000 taken by him from dividends of $720,000 earned during that time; that the plaintiff was entitled to receive out of those earnings so wrongfully appropriated $108 as his proportionate share on his 60 shares of stock. Second, he alleged that his assignor, Charles A. Miller, owned 798 shares of the stock of the corporation, and that Miller was entitled to receive $1,436.40 on account of the $18,000 so wrongfully appropriated, and he alleged the transfer of Miller's claim to himself. In the third cause of action, it was alleged that upon the dissolution of the corporation and upon the capital stock returned, the defendant appropriated $52,500 of the money of the corporation, of which $315 was due to the plaintiff upon his 60 shares. And, fourth, he alleged that $4,189.50 of said $52,500 was due to the plaintiff's assignor, Miller, on his 798 shares, which demand had been assigned to the plaintiff.

The defendant, answering, alleged that more than 90 per cent. of the capital stock of the corporation had been held by residents of Great Britain, and that they had appointed an advisory committee to determine the policy and business management of the corporation, and that this was done with the approval of the board of trustees and the stockholders of the corporation at an annual meeting held in Tacoma; that the action of the advisory committee was subject to the approval of the board of trustees, and that the advisory board's action was approved at the annual meeting of the stockholders, and at the first meeting of the trustees after each stockholders' meeting; that the defendant, as president of the board of trustees, had active management and charge of the corporation; that prior to January 1, 1911, he received a salary of $1,000 a month; that on or about December 14, 1910, he

⬤⟺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

suggested to the advisory committee that he should have additional compensation, and the committee agreed that he should receive 2½ per cent. of the total amount of dividends paid to stockholders each year, which the board of trustees approved by unanimous vote at their several annual meetings, but no minutes of the approval was made upon the minute book; that this arrangement continued from January 1, 1911, to December 31, 1917; that the 2½ per cent. was deducted from the gross earnings of the corporation and not from any of the dividends declared to the stockholders. The answer further alleged that at the time when the arrangement was made for additional compensation up to June 1, 1918, the plaintiff was secretary and auditor of the corporation and made all its disbursement vouchers, and that in annually auditing the books the 2½ per cent. additional compensation was included and explained, and that it was approved by the board of trustees, that on January 13. 1912, the defendant wrote a letter to the plaintiff as auditor stating that by virtue of a resolution passed by the advisory board, he was given 2½ per cent. on account of all dividends. additional to salary, and that each year thereafter the plaintiff issued checks to the defendant for the payment of said 2½ per cent. The answer further alleged that about two years prior to May 31, 1918, the defendant suggested to the advisory board liquidation of the corporation and the payment to him of a commission instead of salary for his services in liquidating; that it was agreed that he should receive 5 per cent. of the liquidated assets, which was approved by the board of trustees and stockholders; that in the course of liquidation, he distributed $1,050,000 to the stockholders and received a commission of $52,500, which was ratified by the board of trustees and the stockholders; that the liquidation services were outside the scope of his duties as president and trustee, and the amount paid him was the reasonable value of his services; that by reason of the acts of Miller, he and the plaintiff, his assignee, were estopped from contending that the compensation paid to the defendant was unauthorized for the reason that Miller as trustee seconded the motion to allow the 5 per cent. commission and voted in favor of it, and the defendant further pleaded that all the amounts claimed by the plaintiff on the first cause of action as to payments made to defendant prior to January, 1917, were barred by the statute of limitations.

The jury found a verdict for the defendant.

G. P. Fishburne, of Tacoma, Wash., for plaintiff in error.

Kerr, McCord & Ivey, of Seattle., Wash., for defendant in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1, 2] The plaintiff assigns error to the ruling of the trial court that all the demands of the plaintiff which accrued prior to 1917 were barred by the statute of limitations. We are not required to discuss the assignment for the reason that the ruling of the court, whether erroneous or not, could have had no effect upon the determination of the case; the jury having found against the plaintiff on his later claims of the same kind which were not barred by the statute. If there was error, it was harmless. The same is true of the assignment that the court erred in ruling that Miller's action in seconding the motion for the payment of the 5 per cent. commission to the defendant and voting for the same estopped him, and his assignee the plaintiff, to assert that the allowance of that commission was illegal and unauthorized, for the plaintiff presented in this third cause of action a demand of the same nature as that which was assigned to him by Miller, and which was unaffected by the question of an estoppel, and the jury upon that demand found in favor of the defendant.

[3] Error is assigned to the court's refusal to instruct the jury that the trustees alone had the power to fix the salary of its officers, and that if the defendant collected $18,000 from the accumulated profits of the corporation without a prior resolution from the board of trustees authorizing him to do so, the plaintiff would be entitled to recover on his first and second causes of action. The instruction so requested leaves out of consideration some of the testimony in the case. There was evidence tending to show that before the services were rendered, there was a resolution authorizing the payment to the defendant of 2½ per cent. on the dividends. The plaintiff's contention that the 2½ per cent. commission was paid only on authority from the advisory committee is not sustained by the record. It is true that there was testimony that in January, 1912, when the plaintiff asked the defendant for some authority for the 2½ per cent. payment, the defendant wrote that by virtue of a resolution of the advisory board passed at its annual meeting January, 1911, the plaintiff was voted 2½ per cent. as a bonus on all dividends declared in addition to his salary. But in addition to this there was evidence that the 2½ per cent. commission was set forth in the annual reports which were approved by the board of trustees and by the stockholders annually, and there was evidence that at the meetings of the trustees each year after the adjournment of the stockholders' meetings, the 2½ per cent. commission was authorized prior to the rendition of the services for which it was paid.

[4] We find no error in the refusal to instruct the jury that the defendant while acting as trustee could not recover pay for past services, in the absence of some express provision therefor by statute, charter, or by-laws, or some agreement to that effect made and entered into before the services were rendered. The corporation was dissolved after having conducted its business for a period of about 19 years. It had offices at Tacoma, Wash., and branches in Alaska, British Columbia, and Scotland. It owned ranches in Alberta. It had 5,000 head of cattle. It raised large crops of wheat. It owned and operated steamers and cold storage plants. The president was not by the by-laws made the manager of the corporation. The liquidation of the assets was a matter entirely distinct from the management of the corporation. There was evidence that the services rendered by the defendant were of a value much greater than the sum which was paid him, that the liquidation was very ably managed, that it was all done under the immediate direction of the defendant, and that it was wholly outside of the scope of his duties as fixed by the by-laws. In Blom v. Blom Codfish Co., 71 Wash. 41, 127 Pac. 596, the Supreme Court of Washington affirmed the general rule that where a president of a corporation renders services as a general manager with the consent of the other officers, he may recover on an implied contract for such services without any express contract therefor. In Fitzgerald Const. Co. v. Fitzgerald, 137 U. S. 98, 11 Sup. Ct. 36, 34 L. Ed. 608, the court held that while an officer of a corporation may recover compensation for performing the usual and ordinary duties of his office, only when there is an express agreement therefor, yet he may be entitled to com-

pensation under an implied contract where he has performed services clearly outside his ordinary duties under circumstances which indicate that it was understood by the other officers of the corporation and by himself that his services were to be paid for. This court made application of the rule in Montana Tonopah Mining Co. v. Dunlap, 196 Fed. 612, 116 C. C. A. 286, holding that an officer or director of a corporation may recover reasonable compensation for services rendered for the corporation outside the scope of his official duties, if the services were rendered under such circumstances as to raise the fair presumption that the parties intended and understood that they were to be paid for it. Among other cases so holding are National Loan & Investment Co. v. Rockland Co., 94 Fed. 335, 36 C. C. A. 370, and see 7 R. C. L. 465; 14a C. J. 137. The case of Wonderful Group Mining Co. v. Rand, 111 Wash. 557, 191 Pac. 631, cited by the plaintiff, is distinguishable from the present case in that after the board of trustees in that case, had performed services under a resolution of the board of directors abolishing all salaries, four of the five members who constituted the board, eleven years later, voted salaries to themselves for the entire period during which they had rendered services to the corporation, disregarding the rule that a trustee may not vote for his own compensation. The court said that the resolution thus to pay themselves for general service under the guise of compensation for special services was "merely a subterfuge."

[5] It is contended that the court erred in excluding proffered evidence that at the time when Miller seconded and voted for the motion for a 5 per cent. commission he did not know that the defendant was receiving $1,000 a month or the 2½ per cent. commission which had been paid to him. In the view which we have already expressed of Miller's action thus sought to be explained, the error, if error there was, was harmless. But we are unable to see how it could be shown that Miller, who was a trustee and had been a stockholder for many years and had attended the stockholders' meetings, could show that he was ignorant of what was done at the meetings and of the contents of the reports of the accountants.

[6] It is contended that the advisory board had no legal existence, and several assignments of error direct attention to the rulings of the trial court in admitting testimony in regard to the advisory board and communications between the board and the defendant. It was in evidence that when the corporation was organized, 85 per cent. thereof was subscribed in Great Britain, and that the defendant, being unwilling to assume the whole responsibility for the corporation, suggested to the stockholders at a meeting in Great Britain that they appoint a committee to work in harmony with the trustees and officers in America, in order to carry out the wishes of the majority. There could be nothing illegal in the creation and activities of such a board so long as it remained an advisory board. The court below in instructing the jury properly delimited its powers, saying:

"This advisory committee was by consent of each and all of the stockholders verbally clothed with power to determine the policy, subject to be approved by the board of trustees, and such action by the board of trustees was taken at the annual meeting of the stockholders and at the first meeting of the

board of directors after each stockholders' meeting. * * * It would not be proper for the corporation to turn over its control to that committee, but it is proper for the corporation to receive suggestions and reports from this advisory committee and then act upon the matter independently themselves as a board."

We find no error for which the judgment should be reversed. Judgment is affirmed.