[No. 19286.    Department One.    October 13, 1925.]

## S. N. TEFFT et al., Respondents, v. J. H. SCHAEFER et al., Appellants.[1]

CORPORATIONS (126, 128)—OFFICERS AND AGENTS—DEALINGS WITH CORPORATION—ACQUIESCENCE—RATIFICATION. Notwithstanding a trustee of a corporation may not vote upon a matter in which he has a personal interest, a minority stockholder and trustee acquiesces in and ratifies the purchase of property from a trustee where, with notice of the contemplated action, he failed to attend the meeting, and made no objection for ten years, during which time the company occupied and improved the premises; and the same rule applies to the increase of such other trustees' salary (though he voted against it), where he made no objection for ten years, and had access to the books showing such increase; but not to a recent large increase of which he had no notice.

SAME (165)—OFFICERS AND AGENTS—DEALING WITH CORPORATIONS—RATIFICATION. Where the court properly refused to cancel the sale of real estate from an interested trustee voting to authorize it, on account of ratification, it is error to cancel a note given for part of the consideration.

SAME (69)—DIVIDENDS—RIGHTS OF STOCKHOLDERS—DISCRETION OF TRUSTEES. While one of three stockholders in a corporation, who has a substantial investment and who was not employed in any capacity, is entitled, after ten years of prosperity during which time cash on hand accumulated to the amount of about $15,000, to have a dividend declared, it is error to order a dividend where a radical

[1]Reported in 239 Pac. 837; 239 Pac. 1119.

change in the conditions had taken place, requiring the company to install new machinery, at an expense of about $50,000, for which contracts had been let prior to the hearing for a dividend, which might make it difficult for the company to meet its obligations.

SAME (87)—ACTIONS BY STOCKHOLDERS—FOR BENEFIT OF CORPORATION—ATTORNEYS' FEES. Where an action on behalf of a corporation is brought by one of three stockholders for his own benefit, and the suit brings no fund to, and does not benefit the other stockholders, it is error to award the plaintiff attorney's fees in excess of the statutory fee.

Cross-appeals from a judgment of the superior court for Spokane county, Lindsley, J., entered October 20, 1924, in favor of the plaintiff, in an action for equitable relief, tried to the court. Modified.

*R. L. Edmiston,* for plaintiffs and appellants.
*Tustin & Chandler,* for defendants and appellants.

ASKREN, J.—In 1906, the defendant corporation was organized as an ice and shingle company by the plaintiff Tefft, the defendant J. H. Schaefer, and one E. W. Schaefer. Tefft was made president and J. H. Schaefer secretary-treasurer, and both were employed in the business at a salary of $100 per month. The stock was owned equally by the three organizers. Two years later, the Schaefers disposed of their stock; but later, in 1913, through failure of the purchasers to complete their contract, J. H. Schaefer, together with one G. H. Schaefer, came back into the corporation. At that time the ownership of the stock of 500 shares was distributed as follows: J. H. Schaefer 259 shares, G. H. Schaefer 50 shares, and S. N. Tefft 191 shares. The two Schaefers and Tefft, being the sole owners of the stock, were made trustees. At the same time, by vote of all three trustees, Tefft was continued as president, and J. H. Schaefer again made secretary-treasurer, and the compensation for each was fixed at $100 per month.

On January 20, 1913, evidently due to trouble between the trustees, Tefft's services in the management of the concern were discontinued by the two Schaefers acting as trustees, but Tefft was retained upon the board as a trustee and officer of the corporation. The following month a resolution was offered whereby J. H. Schaefer was to be manager as well as secretary-treasurer, and his salary fixed at $250 per month. G. H. Schaefer and J. H. Schaefer voted in favor of the resolution, but Tefft voted against it. J. H. Schaefer thereafter performed the duties of manager and secretary-treasurer, and paid himself a salary of $250 per month until January 1, 1920. In October, 1919, at a meeting of the trustees, a resolution was presented raising the salary of J. H. Schaefer to $5,000 a year, beginning January 1, 1920. Tefft was not present at this meeting, but J. H. Schaefer and G. H. Schaefer both voted in favor of it. Thereafter J. H. Schaefer drew this salary until the time of trial.

The shingle business not proving profitable, the corporation engaged in the fuel business on a large scale, and requiring for this purpose additional ground for storage and bunkers, a meeting was called in October, 1914, for the purpose of passing a resolution to purchase six lots near the corporation's plant owned by G. H. Schaefer. Tefft was notified of the meeting but did not attend. The other trustees, J. H. and G. H. Schaefer, passed the resolution to purchase the six lots in question at a price close to nineteen thousand dollars on deferred payments. Two years later, the lots were improved by the erection of coal bunkers and the lots were used by the corporation up until the time of trial. In 1921, the two Schaefers again voted to purchase another half block of near-by real estate with some personal property thereon from J. H. Schaefer at a price of $12,500. This sale had not been completed

at the time of trial. The business of the corporation prospered and the ice and fuel business reached such proportions that, at the time of trial, the fuel business alone was near a quarter of a million dollars annually. No dividends were declared from 1913 on, although the record indicates that the business has a net worth of approximately $100,000.

Plaintiff Tefft, who, as will be seen, was a minority stockholder, brought this suit seeking the cancellation of the purchase in 1914 of the six lots from G. H. Schaefer; the cancellation of the purchase in 1921 of the property from J. H. Schaefer, and for judgment against J. H. Schaefer for the increases in salary voted and drawn by him in excess of $100 per month, and other relief. Upon trial, the superior court held the contract of 1921 to be void, and ordered the same cancelled. But as to the 1914 contract, the court held that the purchase had been for such a great length of time, and the property improved by the corporation in the erection of buildings thereon, that Tefft should be held to have acquiesced in or ratified the purchase of this property, and refused to set it aside. There was a note of $1,734.48, executed by the corporation to G. H. Schaefer under date of December 31, 1917, representing the balance upon the purchase price of the six lots, which the court ordered cancelled; decreed that all salary received by J. H. Schaefer in excess of $100 per month on and after September 1, 1920, should be returned to the corporation, and that a dividend of thirty per cent should be declared upon the capital stock of the corporation. From this judgment, both sides have appealed.

No contention is made by the Schaefers that the court was in error in holding the contract of 1921 for the purchase of real and personal property from J. H. Schaefer should be cancelled. Tefft insists, however,

that the court should have held the same as to the six lots purchased from G. H. Schaefer in 1914.

The rule of law relied upon by Tefft, that the resolution to purchase was one in which one of the trustees who voted for its purchase was personally interested and his vote therefore illegal, applies with all its force to both of these real estate transactions, and also to the resolutions providing for an increase in salary to J. H. Schaefer. The rule is well settled in this state that trustees may not vote as trustees upon matters coming before the board in which they have a personal interest, and that if a trustee does, the action of the board is voidable and may be set aside at the instance of the corporation or of a non-consenting stockholder. *Parsons v. Tacoma Smelting & Refining Co.,* 25 Wash. 492, 65 Pac. 765; *Wonderful Group Mining Co. v. Rand,* 111 Wash. 557, 191 Pac. 631; *Sacajawea Lumber & Shingle Co. v. Skookum Lumber Co.,* 116 Wash. 75, 198 Pac. 1112.

But this rule of law is always subject to the exception that stockholders may ratify or acquiesce in the action of the board. It must be borne in mind that the action of the board in voting this increase was not an act that the board was without power or right to pass upon. The trustees were empowered to fix the salaries, and, therefore, the act being within their powers, it was, according to the weight of authority, merely voidable and not void. 4 Fletcher Cyc. Corporations, pp. 3378-3396.

Before the property was purchased in 1914, notice was sent to Tefft as trustee, who then lived some twenty miles from the office of the corporation. The resolution advised him specifically of the purpose of the meeting. He chose not to attend. Thereafter, according to his own testimony, he saw the ground being improved by the installation of bunkers or other

buildings for the use of the corporation, and saw the property continually used by the corporation until the day of the trial. It would seem that this was sufficient ratification or acquiescence upon the part of Tefft as a stockholder. It will be remembered that all of the stock from 1913 on was held by the three trustees, Tefft and the two Schaefers. To our minds, the continued use of this property for a period of approximately ten years by the corporation, after the notice of the resolution to buy it, must be taken as a very strong indication that each and all of the stockholders saw the situation, were ratifying and acquiescing therein, and the court properly held that the sale should not be set aside. *Russell v. Patterson Co.,* 232 Pa. St. 113, 81 Atl. 136.

We think, however, that the court should have applied the same rule as to the salary of J. H. Schaefer, at least as far as the resolution fixing his salary at $250 per month. Tefft was present at the meeting when the resolution was offered to combine the duties of secretary-treasurer and manager, each of which formerly paid $100 per month, electing J. H. Schaefer to fill the position, and placing his salary at $250 per month. Tefft voted against the resolution, but he had knowledge that the same was voted on by the other two trustees and that it was being considered by them as passed; from that time on Schaefer was paid such salary, and it appeared upon the books of the company. No effort was made to conceal the fact, nor was there ever any dispute or question concerning it. Tefft claimed that he did not know this salary was being paid, yet it does not appear that during the ten years that followed he ever asked regarding the salary. He claims that at different times he asked to see the books of the company, but that there was some excuse given him—that the books were in the safe, or that they were

not made up, or some other reason. The record shows that Tefft was often at the office of the company; that at one period he came and worked for the company in the boiler room for a couple of months, and it seems apparent to us that Tefft, who had formerly been president and manager of the corporation, and who, during all of the time from 1913 to the date of trial was a trustee of the company, although refusing to attend meetings and taking no active part therein, was in a position where he knew this salary was being paid, or could have had this knowledge with the slightest inquiry upon his part. The salary paid to J. H. Schaefer was not unreasonable nor unjust in view of the business of the company and its attendant success. Tefft does not seriously dispute this fact, for in his testimony when asked in regard to the services performed by J. H. Schaefer, when viewed from the aspect of the financial condition of the company and the results obtained, stated that the salary received by J. H. Schaefer would be considered as earned were he not a stockholder of the company.

It seems to be the rule that, where trustees pass a resolution such as the one in question, a dissenting stockholder should timely bring an action to set it aside. It is true that, when the resolution was passed in 1913 fixing Schaefer's salary at $250 per month, if an action had been brought promptly, we would have held that the act was illegal and ineffective for the purpose and left the parties to determine their future course of action. But from 1913 down to the present time, the value of services has reached an entirely different standard. With the outbreak of the World War in 1914, the value of services mounted steadily upward until during the past few years they have been greatly in excess of what they were in 1913; yet it is Tefft's contention that during all these years the salary should

have been $100 per month, which is much less than common labor received, and this to the manager of a company doing a very large annual business.

However, since Tefft was not at the meeting at which the salary of J. H. Schaefer was raised from $250 a month to $5,000 a year, and there is no showing in the record that he was ever advised of that fact, we cannot hold that he ratified this last increase. It follows, therefore, that J. H. Schaefer should return to the corporation, with interest at the legal rate, all salary drawn by him in excess of $250 per month.

The record nowhere discloses any fraud, either in the payment of salary or in the purchase of property. Counsel for appellant Tefft cites many cases to support the rule that the action in voting this salary was illegal, and that reimbursement should be made for all excess over $100 per month, but nearly all the cited cases are those in which actual fraud was found by the court, or the action was timely instituted.

As to the note of $1,734.48, which appears to be a portion of the purchase price of the property bought in 1914, either as principal or interest, we think the court was in error in cancelling this note. When the court refused to cancel the real estate sale it could not cancel a note representing any portion of the purchase price.

The court ordered a dividend of thirty per cent paid on the capital stock, because it thought that the present cash on hand amounting to nearly $15,000, together with the excess salary which J. H. Schaefer would be required to pay back into the corporation treasury, would justify a dividend in that amount. Inasmuch as we hold that the excess to be returned will be much less, it then becomes a question whether, under the circumstances, a dividend should be declared. There is no doubt but what this corporation has been pros-

pering and that, under the showing made, a dividend should have been declared from the earnings of the company prior to suit. It is the contention of the Schaefers that the profits from year to year should be kept in the business to build up a reserve for possible contingencies. While this may be very necessary in a business such as the one under consideration, yet a careful husbanding of the finances should not be carried to the point where a stockholder owning almost two-fifths of the stock, not employed by it in any capacity, and having a substantial investment therein, is without hope that he shall receive some dividends upon his investment in a profitable business. What amount this should be ordinarily rests in the sound discretion of those in whose hands the management of the business is entrusted, yet if conditions with the corporation had remained practically the same up until the time of trial, we would not feel justified in interfering with the court's order that a dividend should be declared. But a radical change in the condition of the company has taken place. In the manufacture of ice, the company has been dependent upon a distilled water steam system where its fuel is obtained from a concern whose plant has burned. The demand for that character of fuel is so great that it has become impossible to continue longer to manufacture ice at a profit, and the trustees found it necessary to contract to install what is known as a raw water electric ice system. The expense is approximately $50,000, but the savings to be made are material, and in the belief of the trustees justifies the expense involved. Contracts had already been let prior to the time of trial for some of these improvements, and the necessity for them was abundantly testified to. There was no evidence disputing this other than that of Tefft, who frankly said that he did not know whether it was re-

quired or not. This presents such a radical change in the condition of the corporation as to make it unwise for the court to order the payment of a dividend at this time, for it might leave the corporation in such financial condition that it would experience difficulty in meeting its obligations. We think, therefore, that the court was in error in ordering a dividend to be declared.

Objection is made also to the allowance of attorney's fees in the sum of $1,500 to appellant Tefft. It was the theory of appellant that, having been partially successful in the suit, and having obtained a refund to the corporation of a fund from which all stockholders should share, reimbursement should be made to him. The basis upon which this rule rests is that, where there are a large number of stockholders upon whose behalf and for whose benefit the suit is waged, the one who accepts the burden and thereby brings to the treasury a fund for the rest, shall not bear the expense alone. But we think the facts in the present case hardly bring it within the rule. There are but two other stockholders, both of them protesting against this suit and ratifying and approving all the previous acts of the trustees. This suit brings no fund to them for their benefit, nor can it be said that either of them is benefited by the outcome of the action. The suit being brought by Tefft for his own benefit, the only costs properly chargeable are statutory. *Boothe v. Summit Coal Mining Co.,* 72 Wash. 679, 131 Pac. 252.

Many other questions are raised by the briefs, but in view of our disposition of this case we do not deem it necessary to refer to them at length.

The case will be remanded with instructions to modify the judgment in accordance with this opinion. It is so ordered.

TOLMAN, C. J., HOLCOMB, and PARKER, JJ., concur.

On Rehearing.

[Department One.   December 1, 1925.]

PER CURIAM.—The opinion in this case provides, in part, "that J. H. Schaefer should return to the corporation, with interest at the legal rate, all salary drawn by him in excess of $250 per month." The trial court, in passing upon this question, had determined that all in excess of $100 per month should be returned, and applied the statute of limitations.

Counsel for appellants now call our attention to the fact that the language in the former opinion may be construed to allow a recovery for a period longer than that covered by the statute of limitations. In order to clarify the opinion, it is ordered that the excess salary to be returned shall be computed within the period of the statute.